**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ATTICUS LIMITED LIABILITY COMPANY,

     *Plaintiff,*

    and

AARON SORKIN,

     *Involuntary Plaintiff,*

    -against-

THE DRAMATIC PUBLISHING COMPANY,

     *Defendant.*

Case No. 1:22-cv-10147-DLC

**DRAMATIC PUBLISHING COMPANY'S REPLY IN**
**SUPPORT OF ITS MOTION TO DISMISS ATTICUS LLC'S COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................................iii

Key Mischaracterizations...............................................................................................................2

    A.   The "private attorney serving as sole arbitrator."...............................................................2

    B.   The Illinois decision was more than a rubber stamp. ........................................................2

    C.   The Rudinplay Affiliates acted "in concert" with the Lee Estate. .....................................3

Argument ........................................................................................................................................3

    A.   The Rudinplay Affiliates never acquired non-first-class rights.........................................3

        1.   The Rudinplay Affiliates cannot avoid 17 U.S.C. § 304(c)(6)(D)..............................3

        2.   Ms. Lee had no right to transfer non-first-class rights. .............................................5

    B.   The Rudinplay Affiliates' claims and issues are precluded..............................................6

        1.   The Rudinplay Affiliates agreed to be bound. ..........................................................6

        2.   The Rudinplay Affiliates were adequately represented..............................................7

        3.   The Rudinplay Affiliates "first-in-time" cases don't apply here................................8

        4.   The Court should not ignore the Illinois judgment. ..................................................8

    C.   The Rudinplay Affiliates all but ignore the derivative works exception. ....................................9

    CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986) ........................................9

*Bourne Co. v. MPL Comm'ns, Inc.*, 675 F. Supp. 859, 866 (S.D.N.Y. 1987) .......................5

*Chicago Title Land Trust Co. v. Potash Corp.*, 664 F.3d 1075, 1079 (7th Cir. 2011 ...........8

*City of Chicago v. St. John's United Church of Christ,* 935 N.E.2d 1158, 1168 (Ill. App. 2010) ....................7

*Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) .................................................................... 1, 6

*Dramatic Publishing Company v. Carter*, --- F.Supp.3d ----,
    2022 WL 2194586, *4 (N.D. Ill. 2022) ............................................................................3

*Gilliam v. Am. B'casting Cos.,Inc.*, 538 F.2d 14, 21 (2d Cir. 1976) ................................. 1, 5

*Illinois Founders Ins. Co. v. Guidish*, 618 N.E.2d 436, 440 (Ill. Ct. App. 1993) ...............9

*Julien J. Studley, Inc. v. N.Y. News, Inc.*, 512 N.E.2d 300, 301 (N.Y.1987) ......................4

*Matter of Emergency Beacon Corp.*, 665 F.2d 36, 39-40, n. 4 (2d Cir. 1981) .....................8

*Mills Music, Inc. v. Snyder*, 469 U.S. 153, 167, n.35 (1985) ...................................... 2, 9, 10

*Mitchell v. Hawley*, 83 U.S. 544, 550 (1872) ........................................................................5

*People v. Baldwin*, 175 N.E.3d 1090, 1098-99 (Ill. Ct. App. 2020) .....................................9

*People v. Harris* 922 N.E.2d 1042 (Ill. 2009) ......................................................................9

*Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) .........................................................8

*Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*,
    503 F.Supp. 1137, 1153 (S.D.N.Y.1980) ........................................................................6

*Southland Corp. v. Keating*, 465.S. 1, 10 (1984) ..................................................................2

*State Bldg. Venture v. O'Donnell,* 940 N.E.2d 1122 (Ill. 2010) ...........................................9

*State Life Ins. Co. v. Bd. of Education*, 81 N.E.2d 877, 880 (Ill. 1948) ...............................8

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ...............................................................................7

*Woods v. Bourne Co.*, 60 F.3d 978, 987 (2d Cir. 1995) .........................................................9

## Statutes

17 U.S.C. § 304 ..............................................................................................................2, 4, 5, 9

9 U.S.C. § 13 ........................................................................................................................ 3, 5

**Other Authorities**

*Reed v. Delta Airlines, Inc.,* 2011 WL 1085338, *4 (S.D.N.Y. March 23, 2011) ...........................................5

Restatement (Second) of Judgments, § 40 ...............................................................................................7

The Rudinplay Affiliates' Complaint claims they got the rights to create and produce their version of *To Kill a Mockingbird* from Harper Lee in 2015. Conspicuously absent from the Complaint and their Response, however, is any explanation of how Ms. Lee had the right to sell them anything but first-class rights. As Dramatic has explained, Ms. Lee granted Dramatic all non-first-class rights in 1969 and she never got them back. This not only was confirmed by the district court in Illinois, but, in the first instance, decided by the Arbitrator, who Ms. Lee promised in 1969 would have the final word on the meaning and extent of all her rights under the 1969 Agreement. The Rudinplay Affiliates haven't offered this Court any basis to conclude that under "the terms of the original grant," anybody other than the Arbitrator had the right to decide the scope of Dramatic's and Ms. Lee's rights. Nor do they offer a lick of authority that would permit this Court to step in and undo what either the Arbitrator or the Illinois court have already done. Nor does any such authority exist.

Before the Rudinplay Affiliates can ask this Court to declare anything regarding non-first-class rights, they have the burden of showing they legitimately got them from Ms. Lee. This wasn't lost on the Arbitrator. Nor was it lost on the district court in Illinois. And it shouldn't be lost on this Court. Importantly, none of this analysis turns on application of res judicata, although that doctrine provides an independent basis for dismissal. As Dramatic has established, a licensor can't transfer rights she doesn't own.[1] The Rudinplay Affiliates refuse to address this authority. Instead, they continue pretending that what happened in Illinois is little more than an intramural squabble between Ms. Lee's Estate and Dramatic with no bearing on what Ms. Lee could sell them, longstanding licensing principles be damned.

As far as the remaining issues go, the Rudinplay Affiliates continue to ignore or mischaracterize principles they find inconvenient. Dramatic will address these infelicities below, but one glaring omission begs mention at the outset. In their Complaint and Response, the Rudinplay

---

[1] *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007); *Gilliam v. Am. B'casting Cos.,Inc.*, 538 F.2d 14, 21 (2d Cir. 1976).

Affiliates promise this Court oodles of law holding that the derivative works exception to § 304(c) of the Copyright Act permits a court to ignore "terms of the grant" governing exclusivity, despite the Supreme Court's express admonition that the exception applies to all and not just "…some of the terms of the grant." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 167, n.35 (1985) Apart from *Mills Music*, not a single case cited by the Rudinplay Affiliates deals directly with the derivative works exception, let alone suggests a court may ignore an exclusivity provision. Consistent with their penchant for ignoring inconvenient controlling authority, the Rudinplay Affiliates also fail to acknowledge—let alone distinguish—any of the Supreme Court's exhaustive analysis of the derivative works exception in *Mills Music*, including its express finding that "…the consequence of a termination that § 304 authorizes **simply do not apply to derivative works that are protected by the Exception…**" defined in § 304(c)(6)(A). *Id.* at 164 (emphasis added). The Court need not wade into the merits of the Rudinplay Affiliates' § 304 analysis, but if it does, it will find that analysis, too, is meritless.

**Key Mischaracterizations**

Dramatic will briefly address a number of relevant misstatements by the Rudinplay Affiliates.

### A.  The "private attorney serving as sole arbitrator."

The Rudinplay Affiliates' Response is rife with references to what they term a "private attorney serving as a sole arbitrator," suggesting that the Arbitration Award here is somehow illegitimate. Congress and the Supreme Court beg to differ. Congress enacted the FAA nearly a century ago and declared a national policy favoring arbitration. *See, e.g.*, *Southland Corp. v. Keating*, 465. U.S. 1, 10 (1984). Moreover, Congress has made clear that a judgment confirming an arbitration award has the "same force and effect" as any other judgment.[2]

### B.  The Illinois decision was more than a rubber stamp.

---

[2] "The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13(c).

In their fact discussion, the Rudinplay Affiliates suggest the Illinois decision involved no substantive determinations by the district court. That is not correct. The Lee Estate knew it had no legal basis to simply vacate the Arbitrator's decision on exclusivity, so it argued the Arbitrator's decision exceeded his powers because it injured third parties, specifically Rudin and Sorkin. *Dramatic Publishing Company v. Carter*, --- F.Supp.3d ----, 2022 WL 2194586, *4 (N.D. Ill. 2022). While the Illinois court did defer to the Arbitrator's Section 304(c) analysis, it expressly found that the non-reviewable finding meant Ms. Lee had no further rights to transfer to Rudin. *Id.*

### C.  The Rudinplay Affiliates acted "in concert" with the Lee Estate.

At footnote 1 of its memorandum, the Rudinplay Affiliates try to dismiss a "series of salacious allegations against" Ms. Lee's handlers. The statements aren't "salacious allegations;" they reflect specific fact-based findings by the Arbitrator. The Rudinplay Affiliates also wrongly attempt to limit those findings to just Ms. Lee's handlers, when, in reality, the Arbitrator's findings also address the Rudinplay Affiliates themselves. Their collaboration with the Lee Estate is directly relevant to privity discussed below, which is why the Arbitrator specifically found the parties acted "in concert" to expand Rudin's rights at the expense of Dramatic.

### Argument

### A.  The Rudinplay Affiliates never acquired non-first-class rights.

For at least two reasons, the Rudinplay Affiliates have no basis to claim the underlying rights upon which they base this action. This failure is fatal to their complaint.

### 1.  The Rudinplay Affiliates cannot avoid 17 U.S.C. § 304(c)(6)(D).

As Dramatic explained, under the plain language of 17 U.S.C. § 304(c)(6)(D), the Rudinplay Affiliates obtained their grant or "agreement to make a further grant," before the effective date of termination and, thus, any claim they have for non-first-class rights fails. (Doc. 29, pp. 12-13.) The

end of the Rudinplay Affiliates' Response belatedly throws in arguments regarding this dispositive threshold issue, none of which provide a basis for straying from the statute's plain language.

First, they claim that because Dramatic isn't suing them for copyright infringement, the scope of the Rudinplay Affiliates' rights isn't relevant. That's a headscratcher. They filed this lawsuit. If they don't have the rights on which they base the lawsuit, they have no lawsuit. The actual words in their Complaint contradict this pretense, including their representation to the Court that an actual controversy exists with Dramatic over the Rudinplay Affiliates' "rights" and their request for a declaration regarding those same "rights." (*See, e.g.,* Doc. No. 1, ¶¶ , 42-45.)

Their arguments don't improve after that. They argue "no grant of rights was made" until December 2018, when "the option was deemed exercised." But their rights don't exist without the 2015 Letter Agreement and even, if, somehow, the Court concluded the agreement isn't a grant, an "option" is, in the express words of the statute, "an agreement to make a further grant." Next the Rudinplay Affiliates claim they might have a license "implied from conduct." They don't, as their Complaint makes clear. They based this lawsuit on the 2015 Letter Agreement (Doc. No. 1, ¶¶ 2, 20-23) and they have not pled any conduct that would give rise to an implied license, especially one with non-first-class rights.[3] More importantly, this newfound claim fails as a matter of law. It is axiomatic that a contract may not be implied where an express contract covers the same subject matter. *Reed v. Delta Airlines, Inc.,* 2011 WL 1085338, *4 (S.D.N.Y. March 23, 2011) (citing *Julien J. Studley, Inc. v. N.Y. News, Inc.*, 512 N.E.2d 300, 301 (N.Y.1987)). Finally, their own exhibits belie that conceit. As of December 2020, the 2015 Letter Agreement was part of the Agreement between No Ice and Sorkin, and no mention is made whatsoever of some implied license. (Doc. 37-4, p. 3.)

---

[3] The conduct described in paragraphs 29-30 of the Complaint involved only first-class productions. The references to Dramatic's opening memorandum (Doc. 29 at 8-11) only show that the Lee Estate and Rudin conspired to falsely tell Dramatic's licensees that Dramatic didn't have non-first-class rights, a fact Plaintiffs now do not dispute.

Their final attempt to rely on *Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 866 (S.D.N.Y. 1987) goes nowhere. *Bourne* simply held that a grantee was not entitled to claim a right of first refusal following termination, despite legislative history suggesting that Section 304(c)(6)(D) was intended to provide that right. It certainly provides nothing to bar Dramatic from challenging the legitimacy of the Rudinplay Affiliates' rights under the 2015 Letter Agreement, which they themselves put at issue in this case to invoke the Court's jurisdiction. (Doc. 1, ¶¶ 2-3, 40-43.)

### 2. Ms. Lee had no right to transfer non-first-class rights.

As noted at the outset of this Reply, the Rudinplay Affiliates have provided this Court with no basis to conclude they obtained their rights legitimately from Ms. Lee. The fact that the 2015 Letter Agreement predates the Arbitrator's decision is of no moment.[4] Court decisions divest third parties of rights they thought they had all of the time. Purchasers who buy goods from patent infringers don't get to hold on to those infringing goods; restaurants who contract with distributors to buy wine don't get to buy any more wine (and their customers are denied the opportunity to drink it) if a court decides the distributor didn't have the right to sell it; purported holders in due course never get good title from a thief. If Ms. Lee didn't have rights to transfer to the Rudinplay Affiliates, she didn't have rights to transfer to the Rudinplay Affiliates, no matter what their agreement says. This principle is so fundamental to contract law, there's even a Latin phrase for it: "*dat quod non habet*" (one cannot give what one does not have). *Mitchell v. Hawley*, 83 U.S. 544, 550 (1872).

A review of the cases cited by Dramatic—and flat-out ignored by the Rudinplay Affiliates— underscores the futility of the Rudinplay Affiliates' claim. In *Gilliam,* 538 F.2d at 17, the BBC got rights in a Monty Python script from the authors with no right to alter it after production. Time-Life, in turn, got U.S. distribution rights from the BBC and gave ABC the right to make certain cuts

---

[4] The Rudinplay Affiliate can't seriously argue that the result is any different if the decision regarding Ms. Lee's rights was made by a court in the first instance rather than an arbitrator. *See* 9 U.S.C. § 13(c).

in the product, even though the Monty Python authors had never granted those rights to BBC. *Id.* at 17-18. When ABC broadcast the film and cut 24 minutes, the authors sued for copyright infringement. The Second Circuit held that even if ABC took the rights in good faith, since a "grantor may not convey greater rights than it owns," the BBC couldn't give Time-Life and, eventually, ABC, the right to edit the work. The fact that ABC got its license before the court found the BBC couldn't grant ABC those rights was irrelevant. *See also, Davis* at 103-04 (same, *citing Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*, 503 F.Supp. 1137, 1153 (S.D.N.Y.1980) (axiomatic "that no one can convey more than his own interest in a work.").

The Rudinplay Affiliates, of course, knew they couldn't get rights Ms. Lee didn't own and they protected themselves should it turn out she didn't own them. That is why in the 2015 Letter Agreement they required that she represent and warrant she had "…the sole and full right and authority . . . to grant the rights granted hereunder." (Doc. No. 30-3 at ¶ 11(e)(iv).) But they knew their rights were subordinate to Dramatic's, which is why that same paragraph begins with a specific reference to Dramatic's preexisting and superseding rights, when Ms. Lee expressly represents that she hadn't entered into any agreement "…that would derogate or conflict with the rights granted' to the Rudinplay Affiliates **"subject to the provisions of Paragraph 2(b) above."** *Id.* at ¶ 11(e)(i) (emphasis added).[5] Not only did the Rudinplay Affiliates know they couldn't get rights from Ms. Lee she didn't own, they knew Dramatic's rights—including the right to have an arbitrator resolve any disputes with Ms. Lee—"derogated and conflicted" with theirs. Their claim is meritless.

**B. The Rudinplay Affiliates' claims and issues are precluded.**

**1. The Rudinplay Affiliates agreed to be bound.**

Despite the foregoing, the Rudinplay Affiliates begin their substantive application of res judicata claiming that they did not agree in the 2015 Letter Agreement to be bound to the terms of

---

[5] Of course, ¶2(b) says that the Rudinplay Affiliates rights are subject to Dramatic's rights.

the 1969 Agreement. In support, they cite § 40 of the Restatement and a Sixth Circuit case that

merely states the rule, but is otherwise inapplicable. As comment (b) to Section 40, provides, even if

the express language in the 2015 Letter Agreement were not clear enough, an agreement to be

bound can also be implied:

> …In ascertaining whether such an agreement is to be inferred, however, it is relevant to consider the closeness of the interests of the persons involved, whether they were represented by the same or collaborating counsel, whether opportunity existed for the person to participate as a party in the first action, whether the person asserted to have made the agreement could invoke benefits of the judgment in the other action should its outcome favor his position, and what representations were made to the court concerning the relation between the actions.

This case satisfies each of these considerations. As the Arbitrator found, the Rudinplay Affiliates

worked "in concert" with the Lee Estate and directly collaborated. They don't deny they could have

intervened in the arbitration. Had the Arbitrator ruled against Dramatic, can anyone seriously

dispute that the Rudinplay Affiliates wouldn't have used the ruling to their own benefit? Finally, the

Lee Estate claimed that the Rudinplay Affiliates were necessary parties to the Arbitration.[6]

### 2.  The Rudinplay Affiliates were adequately represented.

When it comes to the factor of adequate representation as a separate basis for res judicata, the

Rudinplay Affiliates make much of the Supreme Court decision in *Taylor v. Sturgell*, 553 U.S. 880

(2008). They ignore the fact, however, that Illinois law is much broader and, when it comes to the

issue of "virtual representation," Illinois courts have found "…*Taylor* in no way addressed, let alone

overruled, this state's common law regarding privity." *City of Chicago v. St. John's United Church of

Christ,* 935 N.E.2d 1158, 1168 (Ill. App. 2010). And, yet again, they ignore authority cited by

Dramatic showing that under Illinois law, privity arises between parties "who adequately represent

the same legal interests." *Chicago Title Land Trust Co. v. Potash Corp.*, 664 F.3d 1075, 1079 (7th Cir.

---

[6] The Arbitrator concluded that under Seventh Circuit law a non-party could not be compelled to join an arbitration, but didn't dispute the close relationship between the Rudinplay Affiliates and the Lee Estate.

2011). There is no question that when it came to the issue of exclusivity, both the Lee Estate and its licensee, the Rudinplay Affiliates, had identical interests. Not only were the interests "adequately represented," the Rudinplay Affiliates were involved with and fully apprised of those litigation decisions.

### 3. The Rudinplay Affiliates "first-in-time" cases don't apply here.

The bulk of the Rudinplay Affiliates' res judicata discussion focuses on one type of first-in-time "successor in interest" cases. (Doc. 36, pp. 18-20.) Without a doubt, they cite several cases. Unfortunately, they're all irrelevant. Not one of those cases involves the threshold issue of a transfer of rights the transferring party did not own. Instead, they involve, for instance, whether a successor in interest can be bound by a judgment on a tort or breach of contract action obtained after obtaining the rights. Long ago, the Second Circuit rejected any suggestion that a third party's property interest survived a subsequent determination that the party from whom it received that interest hadn't first gotten the rights. *Matter of Emergency Beacon Corp.*, 665 F.2d 36, 39-40, n. 4 (2d Cir. 1981). The Rudinplay Affiliates' cases simply do not apply here nor does the fact that they got Ms. Lee to transfer some of Dramatic's rights to them before Dramatic had a chance to turn to the Arbitrator change anything.

### 4. The Court should not ignore the Illinois judgment.

Finally, the Rudinplay Affiliates argue that under Illinois law, res judicata does not apply until a judgment is final and non-appealable, although they acknowledge that federal law does not impose the same restriction. (Doc. 36, pp. 21-22.) Their statement of Illinois law is misleading. As the Seventh Circuit has explained, Illinois law is far from settled on the question. "We have no idea what the law of Illinois is on the question whether a pending appeal destroys the claim preclusive effect of a judgment." *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) (identifying conflict between *State Life Ins. Co. v. Bd. of Education*, 81 N.E.2d 877, 880 (Ill. 1948) and *Ballweg v. City of Springfield*, 499

N.E.2d 1373, 1375 (Ill. 1986)).[7] In the meantime, some Illinois appellate courts, like the Seventh Circuit, recommend staying the second case pending appeal of the first, relying on an earlier appellate case citing *State Life*. See *e.g., People v. Baldwin*, 175 N.E.3d 1090, 1098-99 (Ill. Ct. App. 2020); *Illinois Founders Ins. Co. v. Guidish*, 618 N.E.2d 436, 440 (Ill. Ct. App. 1993) None of these cases suggest the Court should ignore the earlier decision, which appears to remain good law.

### C.  The Rudinplay Affiliates all but ignore the derivative works exception.

17 U.S.C. § 304(c)(6) provides that post-termination, a derivative work "…may continue to be utilized under the terms of the grant after its termination." Notably, the Rudinplay Affiliates never dispute that the exclusivity term is "a term of the grant." Instead, they spend a lot of time talking about the "utilize" portion of the exception and pretty much ignore the "under the terms of the grant" part. They claim the exception allows a grantee to continue to "utilize" the work, but does not allow the grantee to "prevent" the exploitation of the underlying work. (Doc. 36, p. 12.) This cramped reading ignores the balance of the sentence containing the words "under the terms of the grant…". It also was specifically rejected by the Supreme Court in *Mills Music*: "The word "utilized" as written in the Exception cannot be separated from its context and read in isolation. It is expressly confined by "the terms of the grant." 469 U.S. at 169. And "under the terms of the grant," Dramatic is entitled to enforce the term that says its Play "is to be the only one the amateur acting rights of which [the Lee Estate] will permit to be leased and/or licensed." (Doc. 30-4, p. 1.)[8]

Indeed, to read this term out of the grant amounts to increasing Dramatic's royalty payments to the Lee Estate. As the *Mills Music* court went on to explain, the exception not only preserved the

---

[7] Plaintiff cites *State Bldg. Venture v. O'Donnell,* 940 N.E.2d 1122 (Ill. 2010) and *People v. Harris* 922 N.E.2d 1042 (Ill. 2009), both of which rely on *Ballweg,* but like *Ballweg,* neither mentions or overrules S*tate Life*. Nor do they resolve the conflict discussed in *Rogers.*
[8] The Rudinplay Affiliates ignore binding authority actually involving the derivative works exception cited in Dramatic's brief. *Woods v. Bourne Co.*, 60 F.3d 978, 987 (2d Cir. 1995) says the derivative works exception "preserve[s] during the post-termination period the panoply of contractual obligations that governed pre-termination uses of derivative works by derivative work owners…" (citing *Mills Music*, 469 U.S. at 167).

obligations to pay royalties, but also to protect the author of a derivative work "from being required to pay an increased royalty to the author." *Id*. at 177. But that is just what the Rudinplay Affiliates propose here. The 1969 Agreement's royalty was based on Dramatic retaining exclusive rights. Eliminating Dramatic's right to exclusivity, but requiring it to pay the same royalty to the Lee Estate, means Dramatic is paying the same amount but getting fewer rights, essentially a price increase.[9]

As discussed above, the balance of the Rudinplay Affiliate's arguments are based on cases and principles unrelated to the operative derivate works exception here. The Arbitrator was right. There is no basis for the Rudinplay Affiliates' reading and their case should be dismissed.

## Conclusion

For the foregoing reasons, this Court should dismiss the Rudinplay Affiliates' Complaint with prejudice, award costs, attorneys' fees and any other relief the Court deems appropriate.

Dated: February 15, 2023

Respectfully submitted,

TottisLaw

By:    /s/ Kevin Tottis
      Kevin Tottis (admitted *pro hac vice*)
      Keith Stolte (admitted *pro hac vice*)
      Max A. Stein (admitted *pro hac vice*)
      401 N. Michigan Avenue
      Suite 530
      Chicago, IL 60611
      Tel: (312) 527-1400
      ktottis@tottislaw.com
      kstolte@tottislaw.com
      mstein@tottislaw.com

      McLaughlin & Stern, LLP
      Steven J. Hyman
      David Blasband
      Oliver R. Chernin
      260 Madison Avenue
      New York, NY 10016

---

[9] Nobody disputes that the termination provision does not apply outside the United States. Under the Rudinplay Affiliates' reading, Dramatic will pay the same royalty in the United States as it would in the United Kingdom, where it has exclusive rights. That simply doesn't make sense.

Tel: (212) 447-1100
shyman@mclaughlinstern.com
dblasband@mclaughlinstern.com
ochernin@mclaughlinstern.com

*Attorneys for The Dramatic Publishing Company*