**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ATTICUS LIMITED LIABILITY COMPANY,

    *Plaintiff,*

 and

AARON SORKIN,

    *Involuntary Plaintiff,*

 -against-

THE DRAMATIC PUBLISHING COMPANY,

    *Defendant.*

Case No. 1:22-cv-10147-DLC

---

### DECLARATION OF KEVIN TOTTIS

I, Kevin Tottis, declare as follows:

11.  I am an attorney at TottisLaw, which, along with McLaughlin & Stern, is counsel of record for defendant The Dramatic Publishing Company ("Dramatic"). I make this declaration in opposition to the motion for summary judgment filed by Plaintiff Atticus Limited Liability Company, including to provide information in support of Dramatic's request for discovery pursuant to Federal Rule of Civil Procedure 56(d), and to provide the Court with true and correct copies of the documents attached.[1]

 **A.  Rule 56(d) Discovery.**

12.  At this point in the litigation, Dramatic has not answered the Complaint, nor has it had the opportunity to raise any affirmative defenses or bring any counterclaims or third-party claims it may have. If the Court were to grant the Rudinplay Affiliates' motion now, the resulting

---

[1] I previously submitted a Declaration in support of Dramatic's motion to dismiss. In hopes of avoiding any confusion, this Declaration starts with Paragraph 11 and the Exhibits are numbered starting with Exhibit 8, each picking up where the first Declaration ended.

judgment could operate as a bar to any claims that Dramatic might otherwise have against the Rudinplay Affiliates and any other parties.

13.     Such claims are not simply hypothetical. During the parties' January 30, 2023 Rule 26 conference, I advised counsel for the Rudinplay Affiliates that, if its motion to dismiss were denied, Dramatic would likely bring counterclaims against at least the Rudinplay Affiliates for tortious interference, inducing copyright infringement and potential declarations and noted the likely need for discovery related to them.

14.     Discovery has not begun at this point.

15.     On February 16, 2023, I sent an email to counsel for the Rudinplay Affiliates identifying some of the topics of discovery that Dramatic believes it is entitled to related to the Rudinplay Affiliates' motion for summary judgment and asked Mr. Zavin to respond at his earliest convenience or to contact me if he had any questions. A true and correct copy of that email is attached as Exhibit 8.  That email included almost all of the topics addressed in this declaration. To the extent any were not specifically identified, their subsequent identification only further demonstrates the need for discovery generally in this matter.

16.     To date, I have received neither an acknowledgment nor a response to my email.

17.     Since sending that email, Dramatic has identified a few additional discovery topics related to the Rudinplay Affiliates' Motion. Combined, the topics for which Dramatic seeks discovery to fully justify its opposition to the motion consist of the following:

   a.     **The basis, nature and extent of the alleged implied contract between Ms. Lee and/or the Estate and the Rudinplay Affiliates**. In their Memorandum, the Rudinplay Affiliates argue without any factual basis that even if their 2015 Letter Agreement was invalid under Section 304(c)(6)(D), they had an implied license. (Doc. 36, p. 23.) To allow it to defend against this assertion, Dramatic is entitled to know how the alleged implied

license was formed and the details of any such license. Among other things this would include, the terms of that agreement, the specific conduct they claim gave rise to the agreement, the parties to that agreement and identification of people with knowledge of that agreement.

      b.    **The communications among the Lee Estate (including its lawyers), Sorkin (and his lawyers) and the Rudinplay Affiliates (and their lawyers) regarding the Arbitration.** This material is directly related to issues of res judicata, including the ability of the Rudinplay Affiliates to influence the Lee Estate's actions in the arbitration, including any recommendations of legal theories and strategies they may have offered, and the Lee Estate's efforts to keep them apprised of the progress of the Arbitration, the confirmation proceedings and the appeal. In the Arbitration, the Lee Estate actually asserted a "common interest privilege" as to many of these documents, citing authority which describes that relationship as one "where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *U.S. v. BDO Seidman, LLP*, 492 F.3d. 806, 815-16 (7th Cir. 2007). Although the Rudinplay Affiliates are not bound by the Lee Estate's assertion, if they are going to assert the privilege, Dramatic is entitled to know the basis for it as well as obtain a privilege log. Properly done, the log's descriptions could lend valuable insight into the extent of the Rudinplay Affiliates' and the Lee Estate's cooperation with respect to the Arbitration, the Illinois district court action and the appeal—an issue central to privity. If they disagree with the Lee Estate's characterization of their communications, Dramatic is entitled to review them.

      c.    **Communications and other material relating to the Rudinplay Affiliates' understanding of the 1969 Agreement.** Dramatic is entitled to determine the

Rudinplay Affiliates' knowledge and understanding of the exclusivity provisions, the meaning and effect of the 1969 Agreement on the rights being acquired by them, including the need for representations and warranties from Ms. Lee that the Rudinplay Affiliates drafted for her, and the effect it might have on her successors and assigns as well as the arbitration provision. Dramatic is also entitled to discovery that might show any changes in those understandings over time. This material relates directly to understanding the rights to which the Rudinplay Affiliates believed the 2015 Letter Agreement it was preparing was "subject to."

      d.    **Complete copies of any agreements modifying the 2015 Letter Agreement or transferring any of the rights as well as all drafts relating to the negotiation of the agreement.** In support of their Motion, the Rudinplay Affiliates have provided copies of some, but not all, of the agreements impacting whatever rights were granted in the 2015 Letter Agreement. Some of the documents are heavily redacted. (*See, e.g.,* Doc. 37-4.) In addition, it is clear that the 2015 Letter Agreement was modified by a settlement between the Lee Estate and the Rudinplay Affiliates arising out of litigation in 2018. (*See, e.g.,* Doc. 37-4, § 22.27(b).) Dramatic is entitled to all documents relating to the Rudinplay Affiliates' and Sorkin's alleged rights which they claim form the basis for this lawsuit. By way of example, Rudinplay Affiliates' Exhibit 4 is a heavily redacted copy of an agreement that modifies an earlier version of the agreement that has not been provided to the Court or Dramatic. (Doc. 37-4, pp. 2-3, 29 of 96.) Similarly, the 2018 settlement agreement produced to Dramatic in the Arbitration was almost entirely redacted.

      e.    **All information reflecting Ms. Lee's understanding that she was licensing rights for a new play**. The evidence shows that, for years, Ms. Lee was adamant that she never would agree to license another version of *To Kill A Mockingbird*, whether it was

for Broadway or the stock and amateur market. Dramatic is not claiming rights to first-class theater. Nevertheless, the document upon which the Rudinplay Affiliates bases their claim for non-exclusive non-first-class rights is the 2015 Letter Agreement. It is also clear that neither Mr. Rudin nor anybody on behalf of Mr. Rudin had any contact with Ms. Lee. In sworn declarations, both Mr. Rudin and a Loeb and Loeb partner testified that the 2015 Letter Agreement was negotiated between Mr. Rudin and attorney Seth Gelblum on behalf of Rudinplay and Tim O'Donnell, Ms. Lee's New York-based attorney and that they did not negotiate with anyone in Alabama. (See attached Exhibit 11, ¶ 11 and Exhibit 12, ¶¶ 4-5). In a complaint Ms. Lee filed against her former literary agent 2013, Ms. Lee alleged that she suffered a stroke in 2007. (See attached Exhibit 13, ¶ 17.) She suffered from both macular degeneration and profound hearing loss. (*Id.*) Indeed, her sister and long-time lawyer commented to an author of a book on Ms., Lee and herself in 2011 that "Poor Nelle can't see and can't hear and will sign anything put before her by anyone in whom she has confidence." (See attached Exhibit 14.)

Despite all of this, in 2015, Ms. Lee executed the 2015 Letter Agreement, licensing another version of *TKAM*. Dramatic is entitled to discovery of these facts, from both the Estate and the Rudinplay Affiliates, including the Rudinplay Affiliates' knowledge of Ms. Lee's position regarding its proposed production. All of this goes to the legitimate question of whether Ms. Lee knowingly transferred those rights. As Dramatic's counsel explained to the Rudinplay Affiliates' counsel, if there was a subsequent conveyance by Ms. Lee's Estate following her death that could end the inquiry into this area (*e.g.,* the Estate executed a new license after her death) Dramatic is entitled to see that. Notably, however, since the Arbitration Award was issued in 2021, the Estate has been permanently enjoined from transferring any non-first-class rights. (Doc. 30-5, ¶ 6(e).)

f.      **Contention interrogatories regarding the 1969 Agreement.** Dramatic is entitled to have a clear understanding of those terms of the 1969 Agreement the Rudinplay Affiliates believe do or do not survive the termination, the overall effect of the termination and the basis for those beliefs.

g.      **Authentication of a number of documents**. Either the Rudinplay Affiliates need to stipulate to the authenticity of a number of documents or Dramatic should be given the opportunity to authenticate them through third parties.

h.      **Unredacted documents**. If the Estate is going to rely on any document, Dramatic is entitled to review the entire document, under the terms of a protective order if necessary.

**B.      Documents Submitted in Support of Dramatic's Opposition.**

18.      Attached as Group Exhibit 9 are true and correct copies of documents generated by Dramatic and used in the arbitration that list the non-first-class performances of Dramatic's version of To Kill a Mockingbird from 1970 through 2020.

19.      Attached as Exhibit 10 is a true and correct copy of a declaration of Cecilia Peck filed in an arbitration between the Lee estate and the heirs of Gregory Peck and others.

20.      Attached as Exhibit 11 is a true and correct copy of a declaration of Scott Rudin filed in a 2018 between Rudinplay and the Lee Estate.

21.      Attached as Exhibit 12 is a true and correct copy of a declaration of Stefan Schick filed in a 2018 between Rudinplay and the Lee Estate.

22.      Attached as Exhibit 13 is a true and correct copy of a complaint filed by Harper Lee against Samuel Pinkus, her former literary agent, and related entities in a 2013 lawsuit.

23.      Attached as Exhibit 14 is a true and correct copy of a July 14, 2014 Entertainment Weekly article quoting a 2011 letter from Alice Lee to Marja Mills.

24.     Attached as Exhibit 15 is a true and correct copy of an October 2015 email exchange between Scott Rudin, Seth Gelblum, Tim O'Donnell and Andrew Nurnberg produced in the arbitration, which is being filed under seal.

25.     Attached as Exhibit 16 is a true and correct copy of November 2015 email exchange between Julia Ede, Scott Rudin, Seth Gelblum, and Tim O'Donnell produced in the arbitration, which is being filed under seal.

26.     Attached as Exhibit 17 is a true and correct copy of an October 2015 email exchange between Scott Rudin, Seth Gelblum, Tim O'Donnell and Andrew Nurnberg produced in the arbitration, which is being filed under seal.

27.     Attached as Exhibit 18 is a true and correct copy of a November 18, 2015 email exchange between Seth Gelblum and Tim O'Donnell forwarding an email from O'Donnell to Chris Sergel produced in the arbitration, being filed under seal.

28.     Attached as Exhibit 19 is a true and correct copy of a January 2016 email exchange between Tim O'Donnell and Andrew Nurnberg produced in the arbitration, being filed under seal.

29.     Attached as Group Exhibit 20 are true and correct copies of January 2016 email exchanges between Scott Rudin, Tim O'Donnell and Andrew Nurnberg produced in the arbitration, being filed under seal.

30.     Attached as Exhibit 21 is a true and correct copy of a September 2016 email exchange between Tonya Carter, Julia Ede, Tim O'Donnell and Andrew Nurnberg forwarding emails to and from Rudinplay attorneys produced in the arbitration, being filed under seal.

31.     Attached as Group Exhibit 22 are true and correct copies of sample communications from Rudinplay's attorneys and Dramatic and its licensees produced in the arbitration, being filed under seal.

32.     Attached as Exhibit 23 is a true and correct copy of a January 15, 2019 email from Jonathan Zavin to Matt Lembke forwarding a letter January 15, 2019 letter from Harbottle and Lewis produced in the arbitration, being filed under seal.

33.     Attached as Exhibit 24 is a true and correct copy of January 17, 2019 letter from Herbert Smith Freehills to Harbottle & Lewis produced in the arbitration, being filed under seal.

34.     Attached as Exhibit 25 is a true and correct copy of Dramatic's Arbitration Demand filed in the arbitration.

35.     Attached as Group Exhibit 26 are a true and correct copies of the Notices of Appoint of the three arbitrators.

36.     Attached as Group Exhibit 27 are true and correct copies of the three arbitrator's professional webpages discussing their experience and credentials.

37.     Attached as Exhibit 28 is a true and correct copy of the Lee Estates' Motion for Partial Summary Judgment filed in the Arbitration.

38.     Attached as Exhibit 29 is a true and correct copy of Dramatic's Memorandum in Opposition to the Lee Estate's Motion for Partial Summary Judgment.

39.     Attached as Exhibit 30 is a true and correct copy of the arbitration panel's order denying the Lee Estate's Motion for Partial Summary Judgment.  This order was issued after the briefing reference here and oral argument. The issue regarding Section 304(c)(6)(A) of the Copyright Act was then further argued during the Arbitration hearing, post-hearing briefing and in briefing before the Northern District of Illinois.

40.     Attached as Group Exhibit 31 are true and correct copies of a February email exchange between Jonathan Zavin and Matt Lembke, produced in the arbitration, being filed under seal.

41.    Attached as Exhibit 32 is a true and correct copy of a February 19, 2021 email from AAA's Matt Lacy to the Lee Estate's and Dramatic's counsel acknowledging that the parties agreed to have the arbitration heard by a single arbitrator.

42.    Attached as Group Exhibit 33 are true and correct copies (with redactions) of the Lee Estate's Objections and Responses to Dramatic's Second Requests for Production of Documents and Second Set of Requests of Interrogatories.

43.    Attached as Exhibit 34 is a true and correct copy of a March 7, 2019 email from Matt Lembke to Jonathan Zavin, produced in the arbitration, being filed under seal.

44.    Attached as Exhibit 35 is a true and correct copy of a March 8, 2019 from Jonathan Zavin to Matt Lembke, produced in the arbitration, being filed under seal.

45.    Attached as Group Exhibit 36 are true and correct copies of several emailed communications between Matt Lembke and Jonathan Zavin, produced in the arbitration, being filed under seal.

46.    Attached as Exhibit 37 is a true and correct copy of a May 7, 2019 email from Matt Lembke to Jonathan Zavin, produced in the arbitration, being filed under seal.

47.    Attached as Exhibit 38 is a true and correct copy of a September 26, 2019 email from Matt Lembke to Jonathan Zavin, produced in the arbitration, being filed under seal.

48.    Attached as Exhibit 39 is a true and correct copy of September 30, 2019 letter from Keith Stolte to Loeb & Loeb's Chicago offices attaching a subpoena duces tecum.

49.    Attached as Group Exhibit 40 are true and correct copies of October 14, 2019 email exchanges between Matt Lembke and Jonathan Zavin, produced in the arbitration, being filed under seal.

50.     Attached as Group Exhibit 41 are true and correct copies of November 2, 2020 email exchanges between Matt Lembke and Jonathan Zavin, produced in the arbitration, being filed under seal.

51.     Attached as Group Exhibit 42 true and correct copies of a series email exchanges between Matt Lembke and Jonathan Zavin, produced in the arbitration, being filed under seal.

52.     Attached as Exhibit 43 is a true and correct copy of a July 22, 2022 email from M. Graham Coleman to Kevin Tottis.

53.     Attached as Exhibit 44 is a true and correct copy of the arbitrator's September 27, 2022 Clarification of Interim Award.

54.     Attached as Exhibit 45 is a true and correct copy of the Lee Estates' Notice of Appeal dated February 10, 2023.

55.     Attached as Exhibit 46 is a true and correct copy of the Seventh Circuit's Notice of Case Opening, setting the deadline for the Lee Estate's opening appeal brief. Under the 7th Circuit Rules, Dramatic's response is due April 28, 2023 and the Lee Estate's reply is due May 9, 2023.

56.     Attached as Exhibit 47 is a true and correct copy of the Confidentiality Agreement filed in the arbitration.

57.     Attached as Exhibit 48 is a true and correct copy of the Counterclaim of the Estate of Nelle Harper Lee and Claim of Harper Lee LLC filed in the Arbitration on April 24, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:       February 21, 2023

                                            /s/ Kevin Tottis
                                            Kevin Tottis