UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATTICUS LIMITED LIABILITY COMPANY,<br><br>*Plaintiff*,<br><br>and<br><br>AARON SORKIN,<br><br>*Involuntary Plaintiff*,<br><br>-against-<br><br>THE DRAMATIC PUBLISHING COMPANY,<br><br>*Defendant.* | Case No.: 1:22-cv-10147-DLC |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

LOEB & LOEB LLP
Jonathan Zavin
Wook Hwang
Frank D. D'Angelo
345 Park Avenue
New York, New York 10154
Tel: (212) 407-4000
Fax: (212) 407-4990

Keane Barger
35 Music Square East, Suite 310
Nashville, Tennessee 37203
Tel: (615) 749-8300
Fax: (615) 749-8308

*Attorneys for Plaintiff
Atticus Limited Liability Company*

23585397

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.   DPC HAS NO EXCLUSIVE RIGHTS IN THE NOVEL POST-TERMINATION .......... 1

II.  THE ARBITRAL AWARD HAS NO PRECLUSIVE EFFECT ON ATTICUS
     OR SORKIN ...................................................................................................................... 3

     A.   Atticus and Sorkin Did Not Agree to Be Bound by the Arbitration ....................... 3

     B.   Atticus and Sorkin Are Not Bound by the Arbitral Award Because its
          Copyright Interest Accrued Prior to DPC's Initiation of the Arbitration ............... 4

     C.   Atticus and Sorkin Are Not Bound by the Arbitral Award Based on
          "Adequate Representation" ..................................................................................... 6

     D.   Atticus and Sorkin Are Not Bound by the Arbitral Award Based on
          Control ..................................................................................................................... 8

     E.   The Judgment Is Not Final Under Illinois Law ...................................................... 9

III. DPC'S ARGUMENT THAT THE NO ICE GRANT IS INVALID HAS NO
     RELEVANCE TO THIS ACTION, AND IS WRONG IN ANY EVENT ....................... 9

IV.  THE DISCOVERY DPC SEEKS IS IRRELEVANT TO THE DISPOSITION OF
     THIS ACTION ................................................................................................................. 10

CONCLUSION ........................................................................................................................ 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Agolf, LLC v. Vill. of Arlington Heights*,
   946 N.E.2d 1123 (Ill. App. Ct. 2011) ................................................................................. 7

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. 1998) ................................................................................................ 6

*People ex rel. Burris v. Progressive Land Developers, Inc.*,
   602 N.E.2d 820 (1992) ........................................................................................................ 7

*City of Chicago v. St. John's United Church of Christ*,
   935 N.E.2d 1158 (Ill. App. Ct. 2010) ................................................................................. 7

*Davis v. Blige*,
   505 F.3d 90 (2d. Cir. 2007) ................................................................................................. 5

*Diversified Fin. Sys., Inc. v. Boyd*,
   678 N.E.2d 308 (Ill. App. Ct. 1997) ............................................................................. 5, 7

*Doctor's Assocs. v. Distajo*,
   66 F.3d 438 (2d Cir. 1995) ................................................................................................. 9

*Matter of Emergency Beacon Corp.*,
   665 F.2d 36 (2d Cir. 1981) ................................................................................................. 5

*Esquire Trade & Fin., Inc. v. CBQ, Inc.*,
   562 F.3d 516 (2d Cir. 2009) ............................................................................................... 7

*Giakoumelos v. Coughlin*,
   88 F.3d 56 (2d Cir. 1996) ................................................................................................... 7

*Gilliam v. ABC*,
   538 F.2d 14 (2d Cir. 1976) ................................................................................................. 5

*Holzer v. Motorola Lighting*,
   693 N.E.2d 446 (Ill. App. Ct. 1998) ................................................................................. 4

*IFC Credit Corp. v. Magnetic Techs., Ltd.*,
   859 N.E.2d 76 (Ill. App. Ct. 2006) ................................................................................... 7

*Living Care Alts. of Kirkersville, Inc. v. United States*,
   247 F. App'x 687 (6th Cir. 2007) ...................................................................................... 4

*Lutkauskas v. Ricker*,
    28 N.E.3d 727 (Ill. 2015) ................................................................................................. 7

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002) ............................................................................................ 2

*Mills Music, Inc. v. Snyder*,
    469 U.S. 153 (1985) ........................................................................................................ 3

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ............................................................................................ 4

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ........................................................................................................ 6

*Smith v. Estate of Womack*,
    149 N.E.2d 778 (Ill. App. Ct. 1958) ................................................................................. 7

*Sweeting v. Campbell*,
    119 N.E.2d 237 (Ill. 1954) ............................................................................................... 6

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .................................................................................................. 7, 8

*Va. Hosp. Ass'n v. Baliles*,
    830 F.2d 1308 (4th Cir. 1987) ......................................................................................... 8

*Waite v. UMG Recordings, Inc.*,
    450 F. Supp. 3d 430 (S.D.N.Y. 2020) .............................................................................. 2

*Wilder v. World of Boxing LLC*,
    310 F. Supp.3d 426 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 531 (2d Cir. 2019) ................ 4

*Woods v. Bourne Co.*,
    60 F.3d 978 (2d Cir. 1995) .............................................................................................. 2

**Statutes And Rules**

17 U.S.C. § 101 ........................................................................................................................... 2

17 U.S.C. § 304(c) .................................................................................................................. 2, 3

17 U.S.C. § 505 ......................................................................................................................... 10

Copyright Act of 1909 ................................................................................................................. 3

Fed. R. Civ. P. 56(d) ................................................................................................................. 10

**Other Authorities**

47 AM. JUR. 2D JUDGMENTS § 569 (2023) ....................................................................................5

GOLDSTEIN ON COPYRIGHT § 5.4.2.3 (3d ed. 2023) .........................................................................3

3 NIMMER ON COPYRIGHT § 11.02[C][1] (2023) ........................................................................2-3

RESTATEMENT (SECOND) OF JUDGMENTS § 43, cmt. a ...................................................................5

RESTATEMENT(SECOND) OF JUDGMENTS § 40, cmt. b ....................................................................4

RESTATEMENT (SECOND) OF JUDGMENTS § 39, cmt. c ....................................................................8

**PRELIMINARY STATEMENT**

Despite having acknowledged that this case can and should be resolved as a matter of law with its filing of a pre-answer, pre-discovery motion to dismiss (Doc. 28), DPC now backtracks in response to Atticus's cross-motion for summary judgment, arguing it requires broad swaths of discovery to probe the scope of Atticus's stage rights with respect to the Novel. DPC misses the point entirely. The sole, case-dispositive issue is whether *DPC* continues to hold exclusive rights to a segment of the dramatic rights in the Novel (the stock and amateur rights) following termination of the 1969 Grant, as necessary for DPC to have standing to sue *anyone* for copyright infringement— whether that be Atticus, Sorkin, any local, school or church theater or anyone else that puts on a performance of the Sorkin Play. Atticus's rights are irrelevant to this inquiry. And copyright law is unambiguous that DPC cannot claim exclusive rights, or any other form of copyright ownership, in the Novel in perpetuity notwithstanding the undisputed termination of its prior grant.

Nor are Atticus, Sorkin and the rest of the world bound by the plainly erroneous arbitration decision of a single private practice attorney who resolved a private dispute between DPC and the Estate, pursuant to an arbitration agreement to which *only* DPC and the Estate are bound. Nothing in that flawed decision binds those *not* in privity with the Estate, including pre-arbitration licensees like Atticus and Sorkin or, indeed, the rest of the world—none of whom were parties to the arbitration, none of whom agreed that the Estate could serve as their representative proxy therein, and none of whom otherwise agreed to be bound by the outcome of their private arbitration.

**ARGUMENT**

**I.   DPC HAS NO EXCLUSIVE RIGHTS IN THE NOVEL POST-TERMINATION**

DPC does not dispute that Harper Lee served a valid notice of copyright termination. (Doc. 57 at ¶ 4.) Accordingly, the question before the Court is a purely legal one that requires no discovery: Does the derivative works exception prohibit termination of all exclusive licenses and thereby

eviscerate the statutory termination right?  The answer is obviously no.  Not surprisingly, DPC cannot cite to a *single* decision, treatise or article in which anyone has opined or suggested that the derivative works exception—rather than simply permitting the continued "utilization" of a derivative work—precludes termination of exclusive licenses altogether.

The absurdity of DPC's fundamental premise is underscored by the plain language of the Copyright Act—which expressly provides that "the **exclusive** . . . grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978, . . . **is subject to termination**" (17 U.S.C. § 304(c) (emphasis added))—as well as the "unequivocal purpose" of termination to "provide a mechanism by which artists can reclaim their copyright after the work has had time to become more valuable."  *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 438 (S.D.N.Y. 2020).  The Copyright Act itself defines the "copyright owner" as one who owns "any of one of the **exclusive** rights comprised in a copyright," and defines "transfer of copyright ownership" to include an "**exclusive** license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the **exclusive** rights comprised in a copyright . . . but not including a nonexclusive license." 17 U.S.C. § 101 (emphasis added).  DPC's position, then, is that such "transfers of copyright ownership" *cannot be terminated*—contradicting the Copyright Act's plain language and the purpose of termination, and eviscerating the "inalienable" termination right that the Copyright Act and controlling authority make clear can be exercised "notwithstanding any agreement to the contrary." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 282 (2d Cir. 2002) (quoting 17 U.S.C. § 304(c)(5)).

Every court has held otherwise.  *See* Doc. 36 at 10-11 (listing cases).  And no court has ever read the derivative rights *exception* to the termination right to nullify the termination right altogether, as DPC insists.[1]  That DPC rails against the Copyright Office's own universally accepted position in

---

[1] *See, e.g., Woods v. Bourne Co.*, 60 F.3d 978, 988-89 (2d Cir. 1995) ("[T]he exception protects only authorized *uses* made by derivative work copyright owners, or their licensees." (emphasis added)); 3 NIMMER ON COPYRIGHT § 11.02[C][1] (2023) ("the grantee's continuing right

2

this regard underscores how wrong it is. *See* https://www.copyright.gov/recordation/termination.html ("A derivative work prepared pursuant to a grant before its termination may continue to be utilized under the terms of the grant after its termination, but the post-termination rights . . . to prepare new derivative works revert to the authors or their heirs.").

DPC's attempt to cherry-pick selectively from *Mills* (*see* Doc. 47 at 1-2, 9-10; Doc. 50 at 20-22) is unavailing. As DPC admits, "the issue of exclusivity was not addressed in *Mills*[.]" (*Id.* at 22.) None of DPC's selective quotations supports its position that the derivative rights exception confers *interminable* exclusivity (and, hence, copyright ownership). To the contrary, the Court explained that the termination "caused the ownership of the copyright to revert to the [authors' heirs]" who were thus the "owner of the copyright." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 167 (1985).[2] Despite this clear language, DPC somehow continues to claim that it maintains exclusivity—and therefore copyright ownership—over the non-first class dramatic rights in the Novel. DPC's unprecedented interpretation of the derivative works exception is flat wrong and fails as a matter of law.

## II.  THE ARBITRAL AWARD HAS NO PRECLUSIVE EFFECT ON ATTICUS OR SORKIN

### A.  Atticus and Sorkin Did Not Agree to Be Bound by the Arbitration

In arguing that Atticus "agreed to be bound" by the Arbitrator's conclusion that DPC retained exclusive rights, DPC buries in a footnote (Doc. 50 at 10 n.7) the express language of the No Ice

---

to 'utilize' the derivative work after termination *merely permits continued exercise of the right of public performance by exhibition of the [derivative] film*") (emphasis added); GOLDSTEIN ON COPYRIGHT § 5.4.2.3 (3d ed. 2023) ("Section 304(c)(6)(A) exempts certain continued *uses* of derivative works prepared under authority of a grant that has since been terminated." (emphasis added)).

[2] DPC argues that the Supreme Court's own description of the effect of termination—from the only decision DPC cites on this issue—should be ignored because under the 1909 Copyright Act "an exclusive grant of part of a copyright's rights operated 'merely as a license[.]'" (Doc. 50 at 23 n.17 (citation omitted).) But in *Mills*, the author "assigned his *entire interest* in all renewals of the copyright." *Id.* at 157 (emphasis added). More generally, the termination right set forth in Section 304(c) of the Copyright Act deals *exclusively* with pre-1978 grants once governed by the 1909 Act, and expressly provides that such exclusive grants are "subject to termination[.]" 17 U.S.C. § 304(c).

Grant that defeats this argument at the threshold: No Ice agreed only that the Sergel Play "can continue to be exploited following such termination under the terms of the Prior Agreement on a **non-exclusive basis**[.]"  (Doc. 37-3 at § 2(b)) (emphasis added).  This is the diametric *opposite* of agreeing to be bound by an arbitrator's decision that DPC retained exclusive rights after termination.  No agreement to be bound—whether express or implied—can be found in the face of that plain intent.[3]

After ignoring the plain text of the No Ice Grant, DPC purports to claim that one can "infer" an agreement to be bound, primarily because Atticus and the Estate had a common legal interest in the outcome of the arbitration.  (Doc. 47 at 7; Doc. 50 at 14-15.)  But "no such agreement should be inferred except upon the plainest circumstances."  RESTATEMENT § 40, cmt. b.  As courts have made clear, "entities may have an interest in the same legal issue or in proving or disproving similar facts, but this should not be and is not sufficient to establish privity between them[.]" *Living Care Alts. of Kirkersville, Inc. v. United States*, 247 F. App'x 687, 699 (6th Cir. 2007).  That is true even when the entities "have common ownership" (*id.*), which is not the case here.  DPC cites *no* case finding an implied agreement to be bound under the circumstances here.  Its argument fails as a matter of law.[4]

B. **Atticus and Sorkin Are Not Bound by the Arbitral Award Because its Copyright Interest Accrued Prior to DPC's Initiation of the Arbitration**

As set forth in Atticus's moving brief, the authority is overwhelming and uniform that a grantee is *not* bound by an adverse judgment against a grantor where the grant was made *before* the

---

[3] DPC claims the No Ice Grant "incorporated" the 1969 Grant's arbitration clause.  But the law is clear that any incorporation must be clear and unequivocal.  *See, e.g.*, *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996).  There is not even an arguable, let alone clear and unequivocal, incorporation of any arbitration agreement in the 1969 Grant into the No Ice Grant.

[4] The cases DPC cites (Doc. 50 at 9 & 14 n.10) are inapposite.  *Wilder* did not involve non-party preclusion, and the actual parties to the litigation expressly agreed that "the [sports organization] shall have complete discretion to rule on culpability."  *Wilder v. World of Boxing LLC*, 310 F. Supp.3d 426, 442 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 531 (2d Cir. 2019).  In *Holzer,* the contract expressly stated that the non-party's royalty would be reduced as the result of any damage award.  *Holzer v. Motorola Lighting*, 693 N.E.2d 446, 455 (Ill. App. Ct. 1998).  None of those facts are present here.

proceeding in question.  DPC counters (Doc. 47 at 8) that these cases involved only liability in contract and tort, not property rights. That is simply false, under both federal law *and* Illinois law. Atticus's cited authority includes a multitude of decisions involving the non-preclusive effect of judgments as to property rights conveyed prior to the litigation.  *See* Doc. 36 at 18-20.  The law is uniform in this regard, across jurisdictions.  *See, e.g.,* 47 AM. JUR. 2D JUDGMENTS § 569 (2023) ("[A] person to whom a party to an action has made an assignment or has granted **property or an interest therein** before the commencement of the action is not regarded as in privity with the assignor or grantor so as to be affected by a judgment rendered against the assignor or grantor in the action, unless that person is made a party to the action." (emphasis added)); RESTATEMENT § 43, cmt. a (determination adjudicating title to property "is carried over upon succession"); *Diversified Fin. Sys., Inc. v. Boyd*, 678 N.E.2d 308, 311 (Ill. App. Ct. 1997) ("Where the transferor becomes a party to an **action concerning property**, after it has been transferred, his becoming a party 'does not make him in any sense a representative of his successor in estate.'") (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 44, cmt. f, at 12 (1982)) (emphasis added).

Ignoring all of the cited, on-point authority in this regard, DPC relies upon authority having no relevance to the issue of non-party preclusion over previously transferred property interests. Neither *Davis v. Blige*, 505 F.3d 90 (2d. Cir. 2007) nor *Gilliam v. ABC*, 538 F.2d 14 (2d Cir. 1976) (cited without comment at Doc. 50 at 5-6) stands for the proposition that a post-grant judgment against a grantor is binding on a grantee.  Indeed, neither of these decisions involved preclusion at all.  And in *Matter of Emergency Beacon Corp.*, 665 F.2d 36, 40 (2d Cir. 1981) (cited at Doc. 47 at 8), the court did not even discuss—let alone reject—the uniformly accepted principle that a grantee acquiring its interest prior to the commencement of an action is *not* precluded by the outcome thereof.

Thus, neither Atticus nor Sorkin is bound by the arbitral award by virtue of having acquired their rights *before* DPC commenced its arbitration.  More obviously, third-party regional, local and

5

community theaters and amateur acting groups across the United States—none of whom acquired any rights from Ms. Lee or her Estate—are not bound by the award's erroneous determination that DPC maintains copyright ownership in the Novel following the uncontested termination.[5] If DPC's argument were to prevail, *all* such third parties would be bound by DPC's claim of exclusivity.

    **C.**    **Atticus and Sorkin Are Not Bound by the Arbitral Award Based on "Adequate Representation"**

DPC concedes federal law does not recognize preclusion via "virtual representation" but claims Illinois law does. (Doc. 47 at 7-8; Doc. 50 at 15-17.) Applying federal law is appropriate here. In *Semtek*, the Court reasoned that federal courts sitting in diversity should apply state-law preclusion principles to avoid forum shopping. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Because the arbitration here involved a federal question, there is no risk of forum shopping given that copyright is a uniform body of federal law. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 n.4 (2d Cir. 1998) (applying federal law to arbitration award because "Federal law governs the preclusive effect of a prior federal question judgment"). Moreover, DPC is judicially estopped from claiming that Illinois law applies, after having secured confirmation of the Award in federal court based on the position that the Northern District of Illinois had "subject matter jurisdiction . . . under 28 U.S.C. § 1331 because it involves a federal question arising under . . . the Copyright Act[.]" (Doc. 37-7 at ¶ 4.)

DPC's "virtual representation" argument fails even under Illinois law as well. DPC claims Illinois recognizes an ill-defined "virtual representation" theory. (Doc. 47 at 7; Doc. 50 at 16.) But under the facts at bar, the Illinois courts have been crystal clear that privity cannot exist. *See, e.g., Sweeting v. Campbell*, 119 N.E.2d 237, 240 (Ill. 1954) (no preclusion even where both sets of alleged

---

[5] In this regard, DPC attempts to have its cake and eat it too. If DPC were correct that Atticus and Sorkin acquired *no* stock and amateur rights via the No Ice Grant, DPC cannot simultaneously claim that Atticus or Sorkin maintain privity with the Estate by virtue of that (non-existent) grant.

landowners vigorously litigated issue of ownership over same piece of land); *IFC Credit Corp. v. Magnetic Techs., Ltd.*, 859 N.E.2d 76, 80 (Ill. App. Ct. 2006); *Diversified*, 678 N.E.2d at 311; *Smith v. Estate of Womack*, 149 N.E.2d 778, 781 (Ill. App. Ct. 1958). Critically, *none* of the cases cited by DPC involved a successor who acquired its alleged property interest *before* the action concerning the property was commenced.[6]

Moreover, the decisions DPC cites all predate the Supreme Court of Illinois' decision in *Lutkauskas v. Ricker*, 28 N.E.3d 727 (Ill. 2015). Relying on *Taylor*, the court noted that "the requirements of [federal] due process prohibit the application of *res judicata* to bar an action by a different plaintiff" where the constitutional prerequisites are not met. *Id.* at 741. And binding authority in this Circuit holds that, as a matter of federal due process, privity for preclusion purposes requires (1) "special procedures to protect the nonparties' interests" or (2) or that the "first suit was brought in a representative capacity." *Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 521-22 (2d Cir. 2009) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 897 (2008) (reversing application of res judicata); *see also, e.g., Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996) (even if state-law requirements for preclusion are satisfied, "as a matter of federal law a state cannot give preclusive effect in its own courts to a constitutionally infirm judgment"). Here, DPC has not and cannot allege facts to establish either of these factors.[7] As a matter of law, the Estate did not "virtually represent" Atticus, much less Sorkin.

---

[6] Additionally, the Illinois cases finding virtual representation are limited to claims where one of the parties is a governmental actor. *See Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1132 (Ill. App. Ct. 2011) (municipal corporation); *City of Chicago v. St. John's United Church of Christ*, 935 N.E.2d 1158, 1168 (Ill. App. Ct. 2010) (municipality); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820 (1992) (attorney general on behalf of State).

[7] Such special protections, the Supreme Court has held, are those that exist for "properly conducted class actions" under Federal Rule of Civil Procedure 23. *Taylor*, 553 U.S. at 894. Due process requires a formally defined legal relationship, such as "suits brought by trustees, guardians, and other fiduciaries[.]" *Id*.

### D.     Atticus and Sorkin Are Not Bound by the Arbitral Award Based on Control

Nor can privity be established by any purported control Atticus or Sorkin exercised over "the Lee Estate and its legal team[.]" (Doc. 50 at 17-18.) That Atticus has no "control" over the Estate is clear from the fact that Atticus's predecessor (No Ice f/k/a Rudinplay) and the Estate were litigation *adversaries* as recently as 2018. *See Rudinplay, Inc. v. Estate of Harper Lee, et al.*, No. 18-cv-03300-AT (S.D.N.Y.); *Tonja Carter v. Rudinplay, Inc.*, No. 18-cv-117 (S.D. Ala.). Even more implausible is the notion that Sorkin—the copyright owner of the work (the Sorkin Play) that DPC seeks to suppress—could have exercised "control" over the Estate in the arbitration. DPC implicitly concedes as much by having made *no* claim that it requires any discovery from Sorkin to probe the factual charade that the Estate was controlled by anyone other than its own fiduciaries and attorneys.

DPC's allegations do not suffice to establish any manner of "control." According to DPC, Atticus (1) made "recommendations," (2) "supplied . . . salient materials in the arbitration," and (3) occasionally "communicat[ed]" with the Estate. (*Id.* at 3, 17-18.) But this type of assistance does not come close to establishing the "control" necessary to find privity. As set forth in the Restatement, "[i]t is not sufficient … that the person merely contributed funds or advice in support of the party, supplied counsel to the party, or appeared as *amicus curiae*." RESTATEMENT § 39, cmt. c. Rather, the nonparty must have had *actual* control, i.e., "effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action." *Id.*; *see also, e.g., Taylor*, 553 U.S. at 906 ("A mere whiff of 'tactical maneuvering will not suffice. . . ."); *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1313 (4th Cir. 1987) (rejecting "control" argument, even when non-party "participated in the . . . litigation in a number of ways," including providing to party evidence used at trial and attending district court conferences and depositions, because non-party did not have "any effective choice as to the legal theories and proofs advanced in the prior suit").

Accordingly, even assuming the full truth of DPC's factual suppositions, the premise of DPC's contention that both Atticus *and* Sorkin "controlled" the Estate, its fiduciaries and its counsel so as to establish privity fails as a matter of law.

### E. The Judgment Is Not Final Under Illinois Law

Even if DPC were correct that Illinois law applies, preclusion cannot apply because the judgment is not final. DPC claims Illinois law on this issue is unsettled. (Doc. 47 at 8-9; Doc. 50 at 18-19.) The Second Circuit disagrees. "[A]n Illinois judgment is not final, and thus not entitled to preclusive effect, until the time for appeal has expired." *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 449 (2d Cir. 1995) (citing *Ballweg v. City of Springfield*, 499 N.E.2d 1373 (Ill. 1986)).

## III. DPC'S ARGUMENT THAT THE NO ICE GRANT IS INVALID HAS NO RELEVANCE TO THIS ACTION, AND IS WRONG IN ANY EVENT

DPC argues that if Atticus "does not have the rights on which [it] base[s] the lawsuit, [it] ha[s] no lawsuit." (Doc. 47 at 10.) But Atticus's lawsuit is not "based on," and does not require, that Atticus has *any* stage rights to the Novel.[8] In view of DPC's public proclamations that it owns exclusive stock and amateur rights, and the concomitant threat of litigation, Atticus seeks only a declaration that DPC has no exclusive rights in the Novel as necessary to bring a claim for infringement. That inquiry turns *solely* on the scope of DPC's copyright interest in the Novel, and *not* on the scope or even the existence of any such rights held by Atticus or Sorkin. Acknowledging as much, DPC itself explains that this case turns on "the limited issue before this Court regarding exclusivity." (Doc. 50 at 2 n.1).

DPC's contention that the "actual words" in the Complaint seek a declaration that Atticus has rights in the Novel (Doc. 47 at 4) is simply false. Two declarations are sought by this action: (1) that "Atticus and Sorkin have the right, ***in relation to DPC***, to present" performances of the Sorkin Play

---

[8] For the reasons set forth in Atticus's moving brief (Doc. 36 at 22-23), DPC's position that Atticus and Sorkin have no such rights is wrong in any event.

9

as to which DPC claims exclusive rights, and (2) that any such productions "have not infringed and could not infringe any purported copyright interest **DPC claims to hold** to the Novel." (Doc. 1 ¶ 45 (emphasis added.)  These declarations require a determination that DPC, in relation to Atticus and Sorkin, have no exclusive rights in the Novel *only* and thus lack standing to sue either of them for infringement.

IV.  **THE DISCOVERY DPC SEEKS IS IRRELEVANT TO THE DISPOSITION OF THIS ACTION**

The discovery DPC seeks under Fed. R. Civ. P. 56(d) (*see* Doc. 50 at 3-5) is limited almost entirely to a fishing expedition purportedly to probe the scope of Atticus's rights in the Novel.  For the reasons explained above, that inquiry, and the demanded discovery, is irrelevant.

DPC also seeks discovery on the communications between Atticus and the Estate concerning the arbitration.  But, as discussed herein, DPC's contentions that Atticus made "recommendations," provided "materials" and "communicat[ed]" with the Estate, even if proven, do not come close to establishing the "control" necessary to deem Atticus to be in privity with the Estate.  Moreover, any such "control" by Atticus would do nothing to establish that *Sorkin* had any involvement, much less "control," over the Estate and its representatives who actually controlled the course of its arbitration with DPC.

## CONCLUSION

Accordingly, Atticus respectfully requests that the Court (1) grant summary judgment in its favor, and the declaratory relief requested by this action, and (2) award Atticus its costs and reasonable attorneys' fees incurred in this suit.  *See* 17 U.S.C. § 505.

Dated: March 3, 2023
       New York, New York

                              LOEB & LOEB LLP

                              By: */s/ Jonathan Zavin*
                                   Jonathan Zavin
                                   Wook Hwang
                                   Frank D. D'Angelo
                                   345 Park Avenue
                                   New York, New York 10154
                                   Tel: (212) 407-4000
                                   Fax: (212) 407-4990

                                   Keane Barger
                                   35 Music Square East, Suite 310
                                   Nashville, Tennessee 37203
                                   Tel: (615) 749-8300
                                   Fax: (615) 749-8308

                              *Attorneys for Plaintiff Atticus Limited Liability Company*

23585397