UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ATTICUS LIMITED LIABILITY COMPANY,

    *Plaintiff*,

and

AARON SORKIN,

    *Involuntary Plaintiff*,

-against-

THE DRAMATIC PUBLISHING COMPANY,

    *Defendant.*

Case No.: 1:22-cv-10147-DLC

Hon. Denise L. Cote

**PLAINTIFF'S RESPONSES TO DRAMATIC PUBLISHING COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

LOEB & LOEB LLP
Jonathan Zavin
Wook Hwang
Frank D. D'Angelo
345 Park Avenue
New York, New York 10154
Tel: (212) 407-4000
Fax: (212) 407-4990

Keane Barger
35 Music Square East, Suite 310
Nashville, Tennessee 37203
Tel: (615) 749-8300
Fax: (615) 749-8308

*Attorneys for Plaintiff*
*Atticus Limited Liability Company*

24163060

Plaintiff Atticus Limited Liability Company ("Atticus") respectfully responds to the Statement of Undisputed Material Facts (DE 80) submitted by Defendant The Dramatic Publishing Company ("DPC") in support of DPC's Motion for Summary Judgment (the "Motion") (DE 76).

Solely for purposes of the Motion, and without waiving and expressly reserving all rights to challenge the accuracy of any stated facts or the authenticity of any referenced documents in subsequent proceedings in this or any other action, Atticus responds to the numbered paragraphs of DPC's Statement of Undisputed Material Facts as follows:

1. On January 9, 2019, counsel for Atticus Limited Liability Company ("Atticus") sent a letter to Dramatic. Declaration of Christopher Sergel III ("Sergel Decl."), ¶ 3 and Ex. 1 (January 9, 2019 letter from Jonathan Zavin to Dramatic Publishing Company).

    **RESPONSE:** Undisputed.

2. The January 9, 2019 letter stated that "there is a planned professional tour of the Dramatic Publishing adaptation [of *To Kill a Mockingbird*] in the U.K. and Ireland, commencing in early February, that is booked to perform in major commercial venues." Sergel Decl., Ex. 1.

    **RESPONSE:** Undisputed that counsel for Atticus sent the referenced letter, which speaks for itself.

3. The January 9, 2019 letter stated that Atticus is "the exclusive worldwide licensee (via assignment from Rudinplay Inc.) of the Estate of Harper Lee ('Lee') for live stage rights to the novel *To Kill a Mockingbird* (the 'Novel'), subject only to the limited rights granted by Lee to [Dramatic] in 1969 to create a theatrical adaptation of the Novel for amateur performances." Sergel Decl., Ex. 1.

    **RESPONSE:** Undisputed that counsel for Atticus sent the referenced letter, which speaks for itself.

4. The January 9, 2019 letter stated that the planned tour of the Dramatic Publishing adaptation of *To Kill a Mockingbird* in the U.K. and Ireland would "be a clear violation" of "Atticus's exclusive rights." Sergel Decl., Ex. 1.

**RESPONSE:** Undisputed that counsel for Atticus sent the referenced letter, which speaks for itself.

5. The January 9, 2019 letter stated: "please understand that Atticus intends to vigorously enforce its exclusive rights to perform a live stage adaptation of the Novel . . . ." Sergel Decl., Ex. 1.

**RESPONSE:** Undisputed that counsel for Atticus sent the referenced letter, which speaks for itself.

6. The 1969 agreement between Dramatic and Harper Lee defined Dramatic's rights to *To Kill a Mockingbird* in Paragraph 4. ECF 37-1 is a true and correct copy of the 1969 Agreement between Dramatic and Harper Lee.

**RESPONSE:** Undisputed that Harper Lee and DPC entered into the referenced agreement, which speaks for itself, but disputed that it is material to the pending Motion.

7. ECF 37-3 is a true and correct copy of the 2015 Agreement between Harper Lee and Atticus' predecessor, Rudinplay.

**RESPONSE:** Undisputed that Harper Lee and Rudinplay entered into the referenced agreement, but disputed that it is material to the pending Motion.

8. Harper Lee's lawyer stated to Rudinplay Inc. during negotiations for the 2015 agreement between Harper Lee and Rudinplay Inc. that Dramatic had "everything but first class rights." Declaration of Kevin Tottis ("Tottis Decl."), Ex. 8 (October 7, 2015 email from Scott Rudin).

**RESPONSE:** Undisputed that the referenced email, which speaks for itself, was sent, but disputed that it is material to the pending Motion.

9. Also in January 2019, Atticus sent cease-and-desist letters to 15 theaters on the U.K. tour of the Christopher Sergel version of *To Kill a Mockingbird* who had licensed rights from Dramatic. Sergel Decl., ¶ 4.

**RESPONSE:** Undisputed that the referenced letters, which speak for themselves, were sent.

10. In February 2019, Atticus sent cease-and-desist letters to theaters in the United States that were planning to present the Christopher Sergel version of *To Kill a Mockingbird*. Tottis Decl., Ex. 3 (February 20, 2019 email and letter from Jonathan Zavin to John Fogle); Sergel Decl, ¶ 4.

**RESPONSE:** Undisputed that the referenced letters, which speak for themselves, were sent.

11. In its letters to U.S. theaters, Atticus claimed that Harper Lee had given Atticus exclusive worldwide rights for all professional productions. Tottis Decl., Ex. 2.

**RESPONSE:** Undisputed that the referenced letters, which speak for themselves, were sent.

12. Atticus' principal, Scott Rudin sent Dramatic's New York counsel an email on January 23, 2019 stating: "Your client sold rights in To Kill a Mockingbird that he does not own or control, rights which belong exclusively to me." He also said "there is nothing more to say about this except that I will move against him with aggression and alacrity if he tries to do it again. I hope the Harper Lee estate and Jonathan Church are smart enough to go after him. What he committed is theft." Mr. Rudin copied his counsel, Jonathan Zavin, on the email. Tottis Decl., Ex. 1 (January

3

23, 2019 email from Scott Rudin to Alvin Deutsch).

**RESPONSE:** Undisputed that the referenced email, which speaks for itself, was sent.

13. After Atticus sent cease-and-desist letters to Jonathan Church, U.K. theaters, and U.S. theaters, Mr. Church cancelled the U.K. tour, and a number of theaters in the U.S. cancelled their productions of the Christopher Sergel version of *To Kill a Mockingbird*. Sergel Decl., ¶ 5.

**RESPONSE:** Not material to the pending Motion, and therefore undisputed for the purpose of the pending Motion only.

14. On January 15, 2019, the Lee Estate sent a letter to Dramatic regarding Dramatic's licensing of the U.K. and U.S. productions of the Christopher Sergel versions of *To Kill a Mockingbird*. Sergel Decl. ¶ 6 and Ex. 2 (January 15, 2019 letter from Matthew Lembke to Carrie Blomquist).

**RESPONSE:** Undisputed that the referenced letter, which speaks for itself, was sent, but disputed that the letter is material to the pending Motion.

15. To resolve any issue about the scope of its rights under the 1969 Agreement with Ms. Lee raised by the multiple threats from Atticus, Mr. Rudin personally and the Lee Estate, Dramatic filed an arbitration demand with the American Arbitration Association as required by the terms of the 1969 Agreement. Sergel Decl., ¶ 7.

**RESPONSE:** Undisputed that DPC filed the referenced arbitration demand, which speaks for itself, but disputed that DPC filed the arbitration purportedly to "resolve" any issues DPC had or perceived to have with Atticus or Mr. Rudin, who were not named as parties to the arbitration nor in privity with any of the parties thereto.

16. Dramatic filed an arbitration demand on March 7, 2019, against the Estate of Nelle Harper Lee (the "Estate"). Tottis Decl., Ex. 3 (March 7, 2019, arbitration demand by Dramatic

Publishing Company).

**RESPONSE:** Undisputed, but immaterial to the pending Motion.

17.     Dramatic's arbitration demand asserted that Dramatic owned exclusive rights to stage non-first-class productions of *To Kill a Mockingbird* by licensing the Christopher Sergel version of the novel. Tottis Decl., Ex. 3.

**RESPONSE:** Undisputed that DPC filed the referenced arbitration demand, which speaks for itself, but disputed that DPC's allegations in its arbitration demand against the Estate, a nonparty to this action, are material to the pending Motion.

18.     Specifically, Dramatic's arbitration demand requested:

A declaration that Dramatic's exclusive rights to the Sergel Version of [*To Kill a Mockingbird*] include all of the rights granted to Dramatic under paragraph 4(e) of [the 1969 Agreement between Harper Lee and Dramatic] including but not limited to the exclusive right to license stock and repertoire theaters to perform any stage version of the novel *To Kill a Mockingbird*, whether or not the actors are paid, and that no other person or entity has such rights in any other stage version of the novel

Tottis Decl., Ex. 3, p. 8.

**RESPONSE:** Undisputed that DPC filed the referenced arbitration demand, which speaks for itself, but disputed that DPC's allegations in its arbitration demand against the Estate, a nonparty to this action, are material to the pending Motion.

19.     Dramatic's arbitration demand asserted that that statements by Atticus in its cease-and-desist letters to United Kingdom theaters were "materially false." Tottis Decl., Ex. 3, ¶ 17.

**RESPONSE:** Undisputed that DPC filed the referenced arbitration demand, which speaks for itself, but disputed that DPC's allegations in its arbitration demand against the Estate, a nonparty

to this action, are material to the pending Motion.

20. Dramatic's arbitration demand stated, with respect to Atticus' letter to United Kingdom theaters: "The letter claimed that because the tour would be presented in major commercial venues, it would violate both the Original Grant and the purported rights under the [Atticus] Agreement …. Not a single one of the purported restrictions appear in the Original Grant." Tottis Decl., Ex. 3, ¶ 17.

**RESPONSE:** Undisputed that DPC filed the referenced arbitration demand, which speaks for itself, but disputed that DPC's allegations in its arbitration demand against the Estate, a nonparty to this action, are material to the pending Motion.

21. Dramatic's arbitration demand asserted that Atticus' claim to being the "exclusive worldwide licensee," subject only to Dramatic's "limited" rights to create an adaptation of the novel for "amateur" purposes only, was false. Tottis Decl., Ex. 3, ¶ 26.

**RESPONSE:** Undisputed that DPC filed the referenced arbitration demand, which speaks for itself, but disputed that DPC's allegations in its arbitration demand against the Estate, a nonparty to this action, are material to the pending Motion.

22. Atticus learned of Dramatic's arbitration demand on or shortly after Dramatic filed its demand. Tottis Decl., Ex. 4 (Excerpt from May 25, 2023 Hearing Tr. 18:22-25) (counsel for Atticus stating "I will stipulate that I received a copy of the arbitration demand at or about the time that it was filed. I don't know of the exact date.").

**RESPONSE:** Undisputed, but immaterial to the pending Motion.

23. On April 18, 2019, counsel for the Estate sent to counsel for Atticus a letter with the subject "Notice of Indemnity Obligation." Tottis Decl., Ex. 5 (April 18, 2019 email from Matthew Lembke to Jonathan Zavin, with attachments).

**RESPONSE:** Undisputed that the referenced letter, which speaks for itself, was sent, but disputed that the letter is material to the pending Motion.

24. Also on April 18, 2019, counsel for the Estate sent to counsel for Atticus a letter with the subject "Dramatic Publishing Co. Arbitration." Tottis Decl., Ex. 5 (April 18, 2019 email from Matthew Lembke to Jonathan Zavin, with attachments).

**RESPONSE:** Undisputed that the referenced letter, which speaks for itself, was sent, but disputed that the letter is material to the pending Motion.

25. On April 24, 2019, counsel for Atticus sent a letter responding to the Estate's April 18, 2019 email and letters. Tottis Decl., Ex. 6 (April 24, 2019 letter from Jonathan Zavin to Matthew Lembke).

**RESPONSE:** Undisputed that the referenced letter, which speaks for itself, was sent, but disputed that the letter is material to the pending Motion.

26. The April 24, 2019 letter from counsel for Atticus to counsel for the Estate stated:

I also note that in its claim for relief in the Demand for Arbitration, [Dramatic] seeks a declaration that it has the 'exclusive' worldwide right for all amateur performances of an adaptation of the novel, *To Kill a Mockingbird*. Obviously the Estate granted the non-exclusive rights in the United States to such performances to Rudinplay, represented and warranted that it had the right to grant such rights, and indemnified Rudinplay with respect to any breach of such representations and warranties. **If for any reason Atticus, through Sorkin, is unable to exploit such amateur rights, the damages for such breach will run to millions of dollars, and Atticus will seek to recover any such damages from the Estate.**

In light of the above, in the event that Atticus is damaged in any way by [Dramatic's] claims, or by the actions of the Estate in violation of the agreement between Lee and Rudinplay, Atticus

7

reserves the right to seek appropriate damages from the Estate.

Tottis Decl., Ex. 6 (emphasis added).

**RESPONSE:** Undisputed that the referenced letter, which speaks for itself, was sent, but disputed that the letter is material to the pending Motion.

27. The arbitrator in the arbitration between Dramatic and the Estate issued an Interim Award on October 21, 2021. Tottis Decl., Ex. 7 (Interim Award of Arbitrator (Corrected), Appendix A to Final Award of Arbitrator).

**RESPONSE:** Undisputed that the arbitrator issued the referenced Interim Award, which speaks for itself, but disputed that the Interim Award is material to the pending Motion.

28. The arbitrator in the arbitration between Dramatic and the Estate issued a Final Award on January 28, 2022. Tottis Decl., Ex. 7 (Final Award of Arbitrator).

**RESPONSE:** Undisputed that the arbitrator issued the referenced Final Award, which speaks for itself, but disputed that the Final Award is material to the pending Motion.

29. The arbitrator found that Dramatic "has worldwide exclusive rights to all non-first-class theater or stage rights in *To Kill a Mockingbird* . . . and has all rights under the Agreement that provide for Dramatic to enjoy the full exercise of all non-first-class theater or stage rights." Tottis Decl., Ex. 7, Appendix A, p. 6.

**RESPONSE:** Undisputed that the arbitrator issued the referenced Final Award, which speaks for itself, but disputed that the Final Award is material to the pending Motion.

30. On February 3, 2022, Dramatic posted a statement on its website titled "Dramatic Publishing Wins Its Arbitration Against the Harper Lee Estate Over To Kill a Mockingbird." Sergel Decl., Ex. 3 (printout from Dramatic Publishing Company webpage).

**RESPONSE:** Undisputed that DPC posted the referenced statement, which speaks for

itself, but disputed that the referenced statement is material to the pending Motion.

31. The statement posted on Dramatic's website announced the findings of the final and interim opinions in the arbitration between Dramatic and the Estate of Harper Lee. Tottis Sergel Decl., Ex. 3.

**RESPONSE:** Undisputed that DPC posted the referenced statement, which speaks for itself, but disputed that the referenced statement is material to the pending Motion.

32. The statement posted on Dramatic's website did not state that Dramatic would seek to prohibit Atticus from licensing to third parties or presenting the Sorkin production of *To Kill a Mockingbird*. Sergel Decl., Ex. 3.

**RESPONSE:** Undisputed that DPC posted the referenced statement, which speaks for itself, but disputed that the referenced statement is material to the pending Motion.

33. Dramatic never sent a cease-and-desist letter to Atticus alleging copyright infringement. Sergel Decl., ¶ 9.

**RESPONSE:** Not material to the pending Motion, and therefore undisputed for the purpose of the pending Motion only.

34. Dramatic never has written to, or communicated with, Atticus claiming that the Aaron Sorkin theatrical production of *To Kill a Mockingbird* copies, is substantially similar to, or infringes the Christopher Sergel theatrical production of *To Kill a Mockingbird*. Sergel Decl., ¶ 10.

**RESPONSE:** Not material to the pending Motion, and therefore undisputed for the purpose of the pending Motion only.

35. Dramatic never has sent a demand to Atticus seeking recovery of damages. Sergel Decl., ¶ 11.

**RESPONSE:** Not material to the pending Motion, and therefore undisputed for the purpose

of the pending Motion only.

36. Atticus filed its complaint in this action against Dramatic on November 30, 2022. ECF No. 1.

**RESPONSE:** Undisputed.

37. Dramatic filed its answer to the complaint on May 11, 2023. ECF No. 72.

**RESPONSE:** Undisputed, but immaterial to the pending Motion.

38. In its answer to the complaint, Dramatic raised a statute of limitations affirmative defense. ECF No. 72, at 16-17.

**RESPONSE:** Undisputed, but immaterial to the pending Motion.

39. In its answer to the complaint, Dramatic did not assert a counterclaim for copyright infringement against Atticus. ECF No. 72.

**RESPONSE:** Undisputed, but immaterial to the pending Motion.

40. Dramatic has not filed any claim or counterclaim for copyright infringement against Atticus. ECF No. 72.

**RESPONSE:** Undisputed, but immaterial to the pending Motion.

Dated: June 9, 2023
New York, New York

        LOEB & LOEB LLP

        By: */s/ Jonathan Zavin*
         Jonathan Zavin
         Wook Hwang
         Frank D. D'Angelo
         345 Park Avenue
         New York, New York 10154
         Tel: (212) 407-4000
         Fax: (212) 407-4990

         Keane Barger
         35 Music Square East, Suite 310
         Nashville, Tennessee 37203
         Tel: (615) 749-8300
         Fax: (615) 749-8308

        *Attorneys for Plaintiff Atticus Limited Liability Company*