```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ATTICUS LIMITED LIABILITY COMPANY,      :     22cv10147 (DLC)
                                        :
                         Plaintiff,     :     OPINION AND ORDER
     and                                :
                                        :
AARON SORKIN,                           :
                                        :
               Involuntary Plaintiff,   :
                                        :
             -v-                        :
                                        :
THE DRAMATIC PUBLISHING COMPANY,        :
                                        :
                         Defendant.     :
                                        :
----------------------------------------X
```

APPEARANCES:

For plaintiff Atticus Limited Liability Company:
Frank David D'Angelo
Wook J Hwang
Jonathan Zavin
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154

Keane A. Barger
Loeb & Loeb, LLP
35 Music Square East
Suite 310
Nashville, TN 37203

For defendant The Dramatic Publishing Company:
Kevin Tottis
Keith Stolte
Max A. Stein
TottisLaw
401 N. Michigan Avenue
Suite 530
Chicago, IL 60611

Steven J. Hyman
David Blasband

Oliver R. Chernin
Paul Howard Levinson
McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016

Alexander Talel
Stefan M Mentzer
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

DENISE COTE, District Judge:

This lawsuit concerns rights to perform amateur productions of a play derived from Harper Lee's novel, To Kill a Mockingbird. In an Opinion of April 27, 2023 (the "Opinion"), this Court found as a matter of law that the defendant, The Dramatic Publishing Company ("Dramatic"), no longer has exclusive rights to such performances. Having lost that motion, Dramatic has identified a new defense and argues that plaintiff's right to litigate the issue of exclusivity was in fact time-barred. Dramatic's motion is denied on the merits and as untimely.

## Background

I.   Factual Background

Familiarity with the Opinion is presumed. See Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co., 22cv10147 (DLC), 2023 WL 3135745 (S.D.N.Y. Apr. 27, 2023). Only those facts relevant to Dramatic's statute of limitations defense are summarized below;

these facts are undisputed or taken in the light most favorable to the plaintiff, Atticus Limited Liability Company ("Atticus"), unless otherwise noted.

In 1960, Harper Lee published the American masterpiece <u>To Kill a Mockingbird</u> (the "Novel").  In 1969, Lee entered into an agreement with Dramatic, licensing Dramatic "the complete right throughout the world" to create a dramatization of the Novel which "is to be the only one the amateur acting rights of which [Lee] will permit to be leased and/or licensed" (the "1969 Agreement").  Lee reserved "all rights not expressly granted to [Dramatic]" including but not limited to the "professional acting" rights.  The 1969 Agreement further stated that during the run of any "first class" production in New York or a related touring engagement, Dramatic "shall not permit amateur performances [of Dramatic's adaptation], as provided herein, within a distance of twenty-five (25) miles of the city limits of any city which had a 1960 U.S. census population in excess of 150,000."  Pursuant to the 1969 Agreement, Dramatic's then-President, Christopher Sergel, wrote a stage adaptation of the Novel (the "Sergel Play").

In April 2011, Dramatic was notified that Lee was terminating the 1969 Agreement pursuant to § 304(c) of the Copyright Act.  Four years later, Lee entered into an agreement

with Rudinplay, Inc.[1] to create a new dramatic adaption of the Novel.  The 2015 agreement granted Rudinplay "all live stage rights in and to the Novel," but noted that "the amateur acting rights to the [Sergel Play] can continue to be exploited following [the 2011] termination . . . on a non-exclusive basis in the United States[.]"  Rudinplay subsequently contracted with Aaron Sorkin to serve as the playwright for the new stage adaptation of the Novel (the "Sorkin Play").  Lee died on February 19, 2016.  The Sorkin Play debuted on Broadway on December 13, 2018.

Beginning in January of 2019, Atticus and the Lee Estate separately sent letters to Dramatic regarding productions of the Sergel Play.  The letters asserted that certain of Dramatic's planned productions of the Sergel Play violated the 1969 licensing agreement between Dramatic and Lee because the productions involved "professional acting rights."  Several U.K. and U.S. productions of the Sergel Play were subsequently cancelled.

On March 7, 2019, Dramatic filed an arbitration demand against the Lee Estate.  In its demand, Dramatic asserted that the Lee Estate had breached the 1969 Agreement by hindering the

---

[1] Rudinplay and Atticus are entities owned, controlled, or operated by Scott Rudin ("Rudin").

full exercise of Dramatic's rights and interfering with its related licensing contracts. Dramatic sought, inter alia, a declaration that it maintained exclusive amateur stage rights for any adaptation of To Kill a Mockingbird. Atticus stipulates that it received a copy of the arbitration demand at or about the time that it was filed. The arbitrator entered an interim award on October 21, 2021, and a final award on January 28, 2022 (collectively, the "Arbitration Award"). The Arbitration Award found that Dramatic's exclusive rights survived Lee's 2011 termination letter. The Arbitration Award is currently on appeal to the U.S. Court of Appeals for the Seventh Circuit.

II. Procedural History

Atticus filed this federal lawsuit on November 30, 2022, seeking a declaration that (1) "Atticus and Sorkin have the right, in relation to [Dramatic], to present any and all Second-Class, Stock, Amateur and Ancillary Performances [] of the Sorkin Play in the United States;" and (2) "any such productions of the Sorkin Play have not infringed and could not infringe any purported copyright interest [Dramatic] claims to hold to the Novel." Dramatic moved to dismiss the complaint on January 23, 2023. On February 6, Atticus cross-moved for summary judgment.

The Court denied Dramatic's motion to dismiss and granted in part Atticus' cross-motion in its April 27 Opinion. See

Atticus, 2023 WL 3135745.  The Court held that as a matter of copyright law, specifically § 304(c) of the Copyright Act, Dramatic does not currently possess exclusive rights to perform in the U.S. amateur theatrical productions of works derived from the Novel.  Id. at *5.  The Opinion, however, left open the question of whether Atticus' right to assert as much is limited by the doctrine of claim preclusion based on the ruling in the Arbitration Award.  Id. at *13.  Dramatic contends that Atticus and the Lee Estate are in privity because Atticus "controlled" the Lee Estate in its arbitration with Dramatic.  Id. at *11-12.

On May 11, 2023, Dramatic filed its answer, raising for the first time a statute of limitations defense.[2]  In a conference held on May 25, Dramatic informed the Court that it planned to move for summary judgment on the ground that the statute of limitations bars this action.  On June 2, Dramatic filed the instant motion for summary judgment asserting its statute of limitations defense.  The motion became fully submitted on June 14.

---

[2] In a footnote in Dramatic's response to Atticus' motion for summary judgment, Dramatic noted that it had not "had an opportunity to raise affirmative defenses," but did not specifically mention a statute of limitations defense.  Dramatic also did not raise this defense in its January 23 motion to dismiss.

## Discussion

The standard governing summary judgment motions was set forth in the Opinion and is incorporated by reference.  Dramatic seeks through this summary judgment motion to dismiss Atticus' declaratory judgment action.  Dramatic argues that the action, which was filed in November 2022, is barred by the three-year statute of limitations under the Copyright Act.  Dramatic asserts that Atticus knew no later than March 7, 2019, when Atticus received a copy of Dramatic's arbitration demand, that Dramatic was asserting exclusive rights pursuant to the 1969 Agreement.  According to Dramatic, at that point a reasonably diligent plaintiff would have been put on inquiry notice as to the existence of "a right" and the statute of limitations began to run.

This argument fails.  The "right" which Dramatic sought to resolve in the arbitration with the Lee Estate was not Atticus' right to perform the Sorkin Play and therefore the three-year statute of limitations on which Dramatic relies has not begun to run against Atticus.

The Copyright Act provides that all "civil actions" under its provisions must be brought "within three years after the claim accrued."  17 U.S.C. § 507(b).  A copyright claim ordinarily accrues "when a plaintiff has a complete and present

Case 1:22-cv-10147-DLC Document 87 Filed 07/24/23 Page 8 of 11

cause of action," which typically accrues when an infringing act occurs. Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 670 (2014) (citation omitted). For claims of copyright infringement, each new infringing act causes a new claim to accrue. Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir. 2011) (citation omitted).

There is an exception to this accrual rule, however, for a claim of copyright ownership. Claims of ownership, as distinct from claims of infringement, accrue only once, when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." Id. (citation omitted). Such a claim accrues where there is a "plain and express repudiation of [the claimant's ownership] communicated to the claimant." Horror Inc. v. Miller, 15 F.4th 232, 257 (2d Cir. 2021) (citation omitted); see also Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 317 (2d Cir. 2013). Before applying these principles, it is necessary to define the claims that are raised in this action.

Atticus' action is brought pursuant to the Declaratory Judgment Act. A declaratory judgment action is time-barred "only if relief on a direct claim based on such rights would also be barred." Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992). In its complaint, Atticus seeks a declaration that

8

Atticus and Sorkin are the sole owners of the copyright of the Sorkin Play, and that productions of the Sorkin Play do not infringe on Dramatic's copyright in the Sergel Play.[3]  Atticus' ownership rights in the Sorkin Play, however, are not in dispute here.  Dramatic never claimed and does not now claim any ownership interest in the Sorkin Play.

In declaratory judgment actions addressed to copyright claims, it is often necessary to realign the parties to properly assess the claims.  Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 67 (2d Cir. 2012); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.05 (2023).  That is true here.  In this litigation, the issue in dispute is the extent of Dramatic's copyright interest in the Novel and whether Dramatic has the exclusive right to perform in amateur productions a derivative work based on the Novel.  If Dramatic has such exclusive rights, then it may seek to bar amateur performances of the Sorkin Play.  Thus, this litigation, as the parties agree, turns on a determination of Dramatic's rights.  As Dramatic admits in its motion, "[t]his is a case about the extent of Dramatic's ownership rights."  This action

---

[3] Atticus and Sorkin are, respectively, the production and copyright owners of the Sorkin Play.

therefore anticipates claims that Dramatic may seek to assert one day against amateur productions of the Sorkin Play.

Applying these principles, Atticus' claim in this declaratory judgment action is not time-barred. Its ownership interest in the Sorkin Play is not being litigated here and therefore the three-year statute of limitations under the Copyright Act for claims about its ownership interest has not been triggered, much less run.

Dramatic's assertion of a statute of limitations bar invites serious error. Carried to its logical conclusion, Atticus would forever be barred from challenging Dramatic's assertion of exclusive rights to perform amateur productions derived from the Novel. Should Dramatic sue Atticus in the future for a performance of the Sorkin Play in amateur productions, Atticus would be foreclosed from challenging Dramatic's assertion of exclusive rights. This cannot be. Similarly, Dramatic's assertion that the time for Atticus to bring this action began when it learned of the claims made in Dramatic's arbitration demand against the Lee Estate makes little sense. Atticus could not have known in March of 2019 that the arbitrator would issue an award premised on a fundamental error of copyright law. See Atticus, 2023 WL 3135745, at *5-7. Moreover, Atticus had no right to join the

arbitration proceeding between the Lee Estate and Dramatic and has no ability to appeal from the Arbitration Award.

The novelty of Dramatic's statute of limitations claim is reinforced by the fact that it is untimely. Dramatic has identified the statute of limitations as a defense only after the Court ruled it does not have exclusive rights in amateur productions. Having failed to raise this affirmative defense in its opposition to the motion for summary judgment, Dramatic waived its right to bring that argument. See, e.g., Davis v. Shah, 821 F.3d 231, 246 (2d Cir. 2016).

The sole remaining issue is Atticus' request for monetary sanctions. Courts have the inherent power to "sanction a party . . . to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." Yukos Capital S.A.R.L. v. Feldman, 977 F.3d 216, 235 (2d Cir. 2020). Atticus' request for sanctions is denied.

## Conclusion

Dramatic's June 2, 2023, motion for summary judgment is denied. Atticus' request for monetary sanctions is denied.

Dated:   New York, New York
         July 24, 2023

                                         _____
                                         DENISE COTE
                                         United States District Judge

11