**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ATTICUS LIMITED LIABILITY COMPANY,

        *Plaintiff,*

   and

AARON SORKIN,

        *Involuntary Plaintiff,*

  -against-

THE DRAMATIC PUBLISHING COMPANY,

        *Defendant.*

---

Case No.: 1:22-cv-10147-DLC

## MEMORANDUM OF LAW IN SUPPORT OF
## ATTICUS'S MOTION FOR ATTORNEY'S FEES

LOEB & LOEB LLP
Jonathan Zavin
Wook Hwang
345 Park Avenue
New York, New York 10154
Tel: (212) 407-4000
Fax: (212) 407-4990

Keane Barger
35 Music Square East, Suite 310
Nashville, Tennessee 37203
Tel: (615) 749-8300
Fax: (615) 749-8308

*Attorneys for Plaintiff*
*Atticus Limited Liability Company*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 3

    I.       PROCEDURAL HISTORY ................................................................. 3

          A.      Commencement of this Action ................................................ 3

          B.      Dramatic's Motion to Dismiss and Atticus's Cross-Motion for Summary Judgment ............................................................... 4

          C.      Dramatic's Unfounded Assertion of "Control" and Related Discovery ............................................................................... 5

          D.      Dramatic's Untimely Motion for Summary Judgment on Statute of Limitations Grounds ......................................................... 6

          E.      The Court's Rulings and Final Judgment ................................ 6

ARGUMENT ................................................................................................................. 8

    I.       APPLICABLE LEGAL STANDARD ................................................. 8

    II.      AN AWARD OF REASONABLE ATTORNEY'S FEES IS FULLY WARRANTED UNDER THE COPYRIGHT ACT ............................... 9

          A.      Dramatic's Litigation Positions Were Objectively Unreasonable and, Indeed, Frivolous ........................................................... 9

          B.      Dramatic's Litigation Conduct Was Objectively Unreasonable and Frivolous ............................................................................ 11

          C.      A Fee Award is Necessary to Further the Purposes of the Copyright Act ....................................................................... 13

    III.     THE AMOUNT OF THE REQUESTED AWARD OF ATTORNEY'S FEES IS REASONABLE ................................................................... 13

CONCLUSION ........................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16 Casa Duse, LLC v. Merkin*,
    791 F.3d 247 (2d Cir. 2015).................................................................................................9

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp. 2d 351 (S.D.N.Y. 2006),
    *aff'd*, 249 F. App'x 845 (2d Cir. 2007) ...............................................................................9

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Resources*,
    532 U.S. 598 (2001)............................................................................................................8

*Busher v. Barry*,
    No. 20-3587-cv, 2021 U.S. App. LEXIS 32561
    (2d Cir. Nov. 2, 2021) ......................................................................................................11

*Capitol Records, LLC v. ReDigi Inc.*,
    No. 1:12-cv-95 (RJS), 2022 U.S. Dist. LEXIS 65110
    (S.D.N.Y. Apr. 7, 2022) ...................................................................................................12

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
    246 F.3d 142 (2d Cir. 2001).............................................................................................15

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
    564 F. Supp. 2d 290 (S.D.N.Y. 2008),
    *aff'd*, 326 F. App'x 575 (2d Cir. 2009) .............................................................................12

*Davis v. Shah*,
    821 F.3d 231 (2d Cir. 2016).............................................................................................11

*Doc's Dream, LLC v. Dolores Press, Inc.*,
    959 F.3d 357 (9th Cir. 2020)..............................................................................................8

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ......................................................................................................9, 13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .........................................................................................................13

*Horror Inc. v. Miller*,
    No. 3:16-cv-1442 (SRU), 2022 U.S. Dist. LEXIS 173290
    (D. Conn. Sept. 26, 2022)..................................................................................................8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016) ......................................................................................................9, 13

*Millea v. Metro-North R.R.*,
   658 F.3d 154 (2d Cir. 2011) ........................................................................ 13

*Miroglio S.P.A. v. Conway Stores, Inc.*,
   629 F. Supp. 2d 307 (S.D.N.Y. 2009) ...................................................... 14

*Palmieri v. Lynch*,
   392 F.3d 73 (2d Cir. 2004) .......................................................................... 11

*Porto v. Guirgis*,
   659 F. Supp. 2d 597 (S.D.N.Y. 2009) ........................................................ 9

*Ritchie v. Gano*,
   756 F. Supp. 2d 581 (S.D.N.Y. 2010) ...................................................... 14

*Simmons v. N.Y. City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009) ...................................................................... 15

*Spanski Enters. v. Telewizja Polska S.A.*,
   278 F. Supp. 3d 210 (D.D.C. 2017) .......................................................... 14

*Triodetic Inc. v. Statue of Liberty IV, LLC*,
   582 F. App'x 39 (2d Cir. 2014) ................................................................ 11

*United States v. Drame*,
   No. 18 Civ. 11480 (AKH), 2021 U.S. Dist. LEXIS 64268
   (S.D.N.Y. Apr. 1, 2021) ............................................................................ 11

*Vargas v. Transeau*,
   No. 04 Civ. 9772 (WHP), 2008 U.S. Dist. LEXIS 59344
   (S.D.N.Y. Aug. 6, 2008), *aff'd*, 352 F. App'x 458 (2d Cir. 2009).......... 8

**Statutes and Other Authorities**

17 U.S.C. § 304(c) .......................................................................... 2, 4, 10

17 U.S.C. § 505 .................................................................................. *passim*

Fed. R. Civ. P. 54(d)(2) .......................................................................... 1

Fed. R. Civ. P. 56(d).............................................................................. 4, 12

5 Nimmer on Copyright § 14.10[B][1][b] (2023) .................................8-9

5 Nimmer on Copyright § 14.10 [D][5][a][iii] (2023) ........................11-12

Plaintiff Atticus Limited Liability Company ("Atticus") respectfully submits this memorandum of law in support of its motion, pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d)(2), for an award of attorney's fees.[1]

## PRELIMINARY STATEMENT

In 2019, Defendant The Dramatic Publishing Company ("Dramatic") initiated arbitration against the Estate of Harper Lee ("Lee Estate") with the improper aim of perpetuating its exclusive stock and amateur stage rights to Harper Lee's cherished novel *To Kill a Mockingbird* (the "Novel"), despite the prior termination of those rights by Harper Lee.  In that proceeding, Dramatic advanced the nonsensical position that exclusive licenses are *interminable*, and was able to mislead the single private practice attorney who served as arbitrator into accepting this gross evisceration of the right to terminate granted to authors by the Copyright Act's termination provisions.  With Dramatic having incurred over $2.5 *million* in attorney's fees to obtain this distorted result,[2] the arbitral award further required the Lee Estate to "indemnify" Dramatic for *all* of these fees—which the Lee Estate has paid to Dramatic in full—as well as all attorney's fees incurred by Dramatic in *this* action or any other "legal or administrative action" brought by Atticus (among a host of others).

Assured that it thus had nothing at all to lose from taking costly, unreasonable and, indeed, frivolous litigation positions and tactics in this action, Dramatic, among other things, has:

1.    perpetuated its unreasonable position that, as a matter of general copyright law, exclusive licenses are not subject to termination, contrary to the Copyright Act's

---

[1]  Atticus's attorney's fees are set forth in detail in the accompanying Declaration of Jonathan Zavin ("Zavin Decl.").

[2]  In comparison to the $2.5-million-plus attorney's fee award, Dramatic was awarded only $185,227 in damages in the arbitration (DE 78-7 at 23-24, ¶¶ 1-3), reflecting the fact that the purportedly interminable exclusivity of Dramatic's rights was by far the most significant issue in the arbitration.

unambiguous provision that "the exclusive *or* nonexclusive grant" of a copyright interest "is subject to termination" (17 U.S.C. § 304(c)) (emphasis added);

2.  advanced and maintained the unreasonable position that Atticus and Aaron Sorkin ("Sorkin") were somehow bound by the (obviously erroneous) decision issued in a private arbitration to which neither of them were party, based on the false premise that Atticus and Sorkin "controlled" the Lee Estate in that arbitration;

3.  pressed Atticus for, and required Atticus to engage in, needless discovery with the purported aim of substantiating Dramatic's baseless and unfounded speculation of "control"; and

4.  in a last gasp attempt to maintain interminable exclusivity, advanced the equally unreasonable position that the Copyright Act's statute of limitations barred anyone, including Atticus and Sorkin, from challenging Dramatic's erroneous claim if three years had passed from the time Dramatic simply advanced this erroneous *position*, by way of a private arbitration to which none of them were party.

All of these tactics were costly, and objectively unreasonable, starting with Dramatic's attempt to eviscerate the Copyright Act's termination provisions, which, as this Court observed, "would thwart the plain language of the Copyright Act[.]"  (DE 65 at 18.)  Dramatic's assertion that Atticus "controlled" the Lee Estate's conduct in the arbitration, this Court explained, was equally meritless and based on nothing more than "unsubstantiated speculation."  (DE 88 at 2.)  And Dramatic's argument for a time bar was also soundly rejected with the Court's conclusion that the statute of limitations "has not been triggered, much less run" (DE 87 at 10), and also because "Dramatic waived its right to bring that argument" (*id.* at 11) after having chosen *not* to raise any purported time bar when Atticus moved for complete summary judgment.

Successfully litigating against these meritless positions has cost Atticus $395,162.90 in legal fees, which Atticus respectfully requests be awarded in their entirety.  Not only is Atticus entitled to reimbursement based on the objective unreasonableness of Dramatic's litigation tactics, but the need to deter the type of conduct in which Dramatic has engaged is amplified by the fact that Dramatic is not responsible even for its *own* legal fees in this action—thus incentivizing Dramatic to multiply these proceedings with the meritless positions and tactics it has employed.  Barring a fee award under these circumstances, Dramatic would walk away from this action with the proverbial free ride, bearing no financial responsibility for *any* of the legal fees necessitated by the series of meritless positions Dramatic itself chose to advance.

## BACKGROUND

I.   **PROCEDURAL HISTORY**

   A.   **Commencement of this Action**

This action was prompted, *inter alia*, by Dramatic's public proclamation that it "has worldwide exclusive rights to all non-first-class theater or stage rights in *To Kill a Mockingbird*," pursuant to a 1969 grant of exclusive stage rights from Harper Lee to Dramatic that Ms. Lee terminated by notice served in April 2011.  (*See* https://www.dramaticpublishing.com/updated-to-kill-a-mockingbird-statement.)   Dramatic's pronouncement followed an (egregiously erroneous) arbitral award issued in a private arbitration by a single private practice attorney who concluded that the terms of the 1969 grant somehow "survive[d] termination" (DE 78-7 at 25), a proposition that would negate the Copyright Act's termination provisions altogether with respect to exclusive licenses and assignments.  In that proceeding, the arbitrator not only opined that exclusive licenses are thus interminable, but awarded Dramatic $2,556,999.00 in attorney's fees and costs (DE 78-7 at 18)—all of which the Lee Estate has paid (*see* DE 37-8 n.1)—and further ordered that the Lee Estate "defend,

indemnify and hold harmless Dramatic from or against any and all losses arising from any legal or administrative action brought against Dramatic by . . . Atticus."[3]  (DE 78-7 at 26, ¶ 15.)

Atticus, which was not a party to the arbitration (or the underlying arbitration agreement), commenced this action seeking declaratory judgment that Atticus and Sorkin have the right, in relation to Dramatic, to present performances of the Aaron Sorkin stage adaptation of the Novel (the "Sorkin Play")—in other words, that Dramatic cannot claim exclusive stage rights, or standing to bring a copyright infringement action, against Atticus and Sorkin.  Apparently secure in its belief that its attorney's fees would be covered by the Lee Estate, Dramatic appeared in this action with nine (9) separate attorneys of record associated with three (3) separate law firms.

**B.**     **Dramatic's Motion to Dismiss and Atticus's Cross-Motion for Summary Judgment**

On January 23, 2023, Dramatic filed a motion to dismiss (DE 28) the complaint, arguing, *inter alia*, that Atticus was bound to the arbitral award, despite not having been a party to the arbitration; and, even ignoring the flawed arbitral award, the Copyright Act's so-called "derivative works exception," 17 U.S.C. § 304(c)(6)(A), nullifies an author's right to terminate exclusive licenses entirely.  (*See generally* DE 29, 50.)

Consistent with Dramatic's own position reflected in its pre-discovery motion to dismiss, Atticus thereafter cross-moved for pre-discovery summary judgment.  (DE 34.)  Despite having taken the position that this case could be resolved without resort to any discovery, Dramatic responded to Atticus's cross-motion with a Rule 56(d) declaration (DE 60) claiming that broad swaths of discovery—focused on issues having nothing to do with Dramatic's purportedly exclusive rights or the arbitral proceedings—were now necessary to resolve the issues it previously claimed could be

---

[3] Despite this sweeping language, even the arbitrator could not have intended that the Lee Estate indemnify Dramatic for any fee award issued *against* Dramatic to reimburse a third party like Atticus, which would necessarily be based on this Court's opinion that Dramatic's litigation positions and tactics in this action were unreasonable.

decided as a matter of law.  Dramatic also filed an 81-paragraph "Statement of Additional Facts" (DE 61), to which Atticus was required to respond (DE 64), in an apparent attempt to manufacture confusion and multiply these proceedings with a flood of immaterial averments.

## C.    Dramatic's Unfounded Assertion of "Control" and Related Discovery

By Opinion and Order dated April 27, 2023 (DE 65 at 34), the Court denied Dramatic's motion to dismiss and granted Atticus's motion for summary judgment in part.  Given Dramatic's contention that Atticus "controlled" the Lee Estate in the arbitration, the only issue left open by the Court's Order was "whether Dramatic is entitled to discovery on the issue of whether Atticus controlled the Lee Estate in its arbitration with Dramatic."  (*Id.*)  Perhaps unsurprisingly, Dramatic took the position that extensive discovery was necessary (*see* DE 73), despite having *no* basis to believe that Atticus was involved in, much less "controlled," the arbitration to which Dramatic was itself a party.

During a May 25, 2023 conference, in an effort to justify the expansive discovery it sought, Dramatic continued its rank speculation into how Atticus might have controlled the Lee Estate as a behind-the-scenes puppet master, leading the Court to observe (DE 84 at 8:22-9:5):

> I'm not hearing much that makes a lot of sense.  The issue here is not to allow a fishing expedition or theories that are implausible on their face but to identify if there's any targeted discovery that could actually resolve the issue of control.  So in the past month, I would hope that would have been a focus.  I didn't see in the letter much that was responsive to the definition of control contained in the opinion.  So I didn't see much to support a position that you thought discovery would be useful here.

The Court, however, accepted Atticus's voluntary agreement to produce its own counsel's communications with the Lee Estate relating to the arbitration, in order to resolve this remaining issue.

Those communications revealed the extent to which Atticus was *not* involved the arbitration. *See* DE 86-7 to 86-14 (emails from 9/25/20 to 6/14/21 in which Atticus's counsel asks, "What is the current status/schedule of the arbitration?"; "What is the status of the arbitration.  Have you testified yet, so that you can talk to me about it?"; "How many days has it [the hearing] gone so far?"; "I look forward to you telling me about this when it's over."; "What is the status of the arbitration?"; "Any

5

word on whether you can talk to me.  Both my client and I are, to say the least, curious as to what's going on."; "What is the status of the arbitration? Any end in sight?").  After having reviewed this production, Dramatic, remarkably, continued to request *more* discovery to support its unfounded claim of control.  (*See* DE 86 at 1-2.)

**D.     Dramatic's Untimely Motion for Summary Judgment on Statute of Limitations Grounds**

Contemporaneously with its discovery efforts, Dramatic also advanced a new argument it had failed to raise in opposition to Atticus's motion for summary judgment: that Atticus's claim for declaratory judgment was barred by the Copyright Act's three-year statute of limitations and the one-time accrual rule applicable to parties claiming copyright ownership.  Despite itself noting that "[t]his is a case about the extent of Dramatic's ownership rights" (DE 77 at 12)—*not* Atticus's, or Sorkin's— Dramatic filed a belated motion for summary judgment on this basis, contending that Atticus and Sorkin were time-barred from challenging Dramatic's claimed ownership since this action was commenced more than three years after Dramatic merely took the *position* in a private arbitration, against a *non-party* to this action (the Lee Estate), that its exclusivity was interminable.  (*See generally* DE 77.)

**E.     The Court's Rulings and Final Judgment**

By Opinion and Order dated July 24, 2023 (DE 87), the Court denied Dramatic's statute of limitations motion.  By Order dated July 25, 2023 (DE 88), the Court granted Atticus's motion for summary judgment in full, resolving the issue of "control" in its favor.  Together with the prior April 27, 2023 Opinion and Order, these decisions reflect a complete rejection of every meritless position taken by Dramatic in this action:

- The Court rejected (DE 65 at 18) Dramatic's position that it maintains any exclusive rights to the Novel following termination, explaining that Dramatic's "interpretation fails. Such a reading would thwart the plain language of the Copyright Act, rendering

6

any exclusive license interminable. The Derivative Works Exception does not, and cannot, eviscerate the statutory termination right of § 304(c)."

- The Court rejected (*id.* at 23-27) Dramatic's position that Atticus's predecessor had "agreed" to be bound to the results in the arbitration to which it was not party.

- The Court rejected (*id.* at 28-34) Dramatic's position that Atticus was otherwise bound to the results of the arbitration by any purported "privity" with the Lee Estate, with the one remaining issue of whether Atticus "controlled" the Lee Estate in the arbitration left open as a result of Dramatic's baseless contention.

- The Court rejected (DE 65 at 31-32) Dramatic's demand for expansive discovery relating to Atticus's rights as "irrelevant," explaining that the scope of Atticus's and Sorkin's rights was "unnecessary to resolve through this lawsuit" (*id.* at 32) because this dispute centers on whether "*Dramatic* has exclusive rights" (*id.*) (emphasis added).

- The Court rejected (DE 87 at 7-11) Dramatic's position that Atticus's claim was time-barred, having to explain *again* that Atticus's "ownership interest in the Sorkin Play is not being litigated here" (*id.* at 10); that Dramatic's position on this issue "invites serious error" and "makes little sense" (*id.*); and that Dramatic's motion was "untimely" because "Dramatic waived its right to bring that argument" (*id.* at 11) after having failed to raise it in opposition to Atticus's summary judgment motion.

- Following discovery on the issue, the Court rejected (DE 88 at 2) Dramatic's position that Atticus "controlled" the Lee Estate and denied Dramatic's request for further discovery on this issue, concluding that "Dramatic cannot rely on unsubstantiated speculation" (citation and quotation marks omitted).

Accordingly, by its July 25, 2023 Order (DE 88), the Court granted Atticus's cross-motion for summary judgment "in full" (*id.* at 3) and, on August 1, 2023, judgment was entered for Atticus (DE 92 at 2) granting the complete relief sought in the Complaint, declaring that: (1) "Atticus and Aaron Sorkin have the right, in relation to Dramatic, to present any and all performances of the Sorkin Play"; and (2) "Any such productions of the Sorkin Play have not infringed and do not infringe any copyright interest Dramatic holds in and to the Novel."

## ARGUMENT

## I.    APPLICABLE LEGAL STANDARD

Section 505 of the Copyright Act permits the Court, in its discretion, to award "full costs" and "reasonable attorney's fees" to the "prevailing party" of a copyright infringement action.  *See* Copyright Act, 17 U.S.C. § 505.  There is no question that Atticus, having obtained complete relief, is the "prevailing party" in this action.[4]  Likewise, there is no question that Section 505 applies to claims for declaratory relief, such as the one brought by Atticus, that require construction of the termination provisions of the Copyright Act.  *See, e.g., Horror Inc. v. Miller*, No. 3:16-cv-1442 (SRU), 2022 U.S. Dist. LEXIS 173290, at *6 (D. Conn. Sept. 26, 2022) ("[L]ike others before me, I have no trouble concluding that Section 505 applies to the termination rights declaratory judgment action at bar."); *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 359, 363 (9th Cir. 2020) (holding that Section 505 applies even when the cause of action under the Copyright Act is "asserted as a claim for declaratory relief"); 5 Nimmer on Copyright § 14.10[B][1][b] (2023) ("[J]urisdiction

---

[4] A "prevailing party" is the "party in whose favor a judgment is rendered[.]" *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Resources*, 532 U.S. 598, 603 (2001) (citation omitted).  Here, not only has final judgment been rendered in Atticus's favor (DE 92), but Atticus has prevailed on each contested motion in this action.  *See, e.g., Vargas v. Transeau*, No. 04 Civ. 9772 (WHP), 2008 U.S. Dist. LEXIS 59344, at *7 (S.D.N.Y. Aug. 6, 2008) ("A [party] may be deemed the 'prevailing party' under the Copyright Act when it successfully [prevails on] the significant claims actually litigated in the action."), *aff'd*, 352 F. App'x 458 (2d Cir. 2009).

in federal court arises under the Declaratory Relief Act as well as being premised on the need to construe the provisions of the Copyright Act. So, the Copyright Act allows courts, in their discretion, to grant attorney's fees to the prevailing party under those circumstances.").

Once it is resolved that the party seeking fees is the prevailing party, as is the case here, the touchstone of the analysis is whether a fee award would further the purposes of the Copyright Act, including the goal of "enriching the general public through access to creative works." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994)).  To guide that determination, a number of nonexclusive factors should be considered, including a party's "frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 579 U.S. at 202 (citation omitted); *Fogerty*, 510 U.S. at 534 n.19; *see also, e.g., 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264 (2d Cir. 2015).  Among these factors, a losing party's legal or factual "[objective] unreasonableness" is to be given "substantial weight." *Kirtsaeng*, 579 U.S. at 210.

As set forth more fully below, each of the factors governing the section 505 analysis overwhelmingly weighs in favor of awarding Atticus fees here.

## II.   AN AWARD OF REASONABLE ATTORNEY'S FEES IS FULLY WARRANTED UNDER THE COPYRIGHT ACT

### A.   <u>Dramatic's Litigation Positions Were Objectively Unreasonable and, Indeed, Frivolous</u>

An argument is objectively unreasonable when it "is clearly without merit or otherwise patently devoid of legal or factual basis." *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (citaion omitted); *see also, e.g., Baker v. Urban Outfitters, Inc*., 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) ("objective unreasonableness is one of the most significant factors"), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).  Here, each of Dramatic's positions in the litigation were objectively unreasonable and frivolous.

*First*, the Court "readily" rejected Dramatic's argument that the Copyright Act's derivative works exception renders exclusive licenses interminable.  (DE 65 at 15.)  This Court held that Dramatic's argument contradicted the plain language of the Copyright Act, conflicted with the basic purpose of the Copyright Act's termination provisions, and was unsupported by any precedent.  (*Id.* at 15-19.)  Dramatic's decision to pursue a novel argument lacking supporting authority might have been more understandable were the Copyright Act's language ambiguous on this point.  But it is not.  As the Court held, "The statutory language at issue here is unambiguous.  Section 304(c) provides that the 'exclusive' grant of copyright 'is subject to termination.'"  (*Id.* at 16 (citation omitted).)  Nor can Dramatic seek to bootstrap off the arbitral award to claim that its position was reasonable, when Dramatic was the one who misled the arbitrator with a grossly distorted interpretation of the Copyright Act's termination provisions to obtain an award this Court has already deemed to have been "premised on a fundamental error of copyright law" (DE 87 at 10).

*Second*, the Court rejected each of Dramatic's preclusion arguments. Dramatic's claim that Atticus "agreed" to be bound by an arbitration provision contained in the 1969 Grant, to which Atticus was not a party, found no support in the language of any agreement to which Atticus was actually bound, including the 2015 grant (the "2015 Agreement") from Harper Lee to Atticus and Sorkin's predecessor.  (DE 65 at 23-27.)  Dramatic's claim that the "2015 Agreement created a successor in interest relationship" that bound Atticus to the arbitration award "misconstrue[d] the law of privity." (*Id.* at 27.)  And Dramatic's contention that the Lee Estate "adequately represented" Atticus's interests in the arbitration conflicted with binding and settled Supreme Court authority.  (*Id.* at 28-30) ("The theory of virtual representation was squarely rejected by the Supreme Court in *Taylor*, 553 U.S. at 898, and cannot be relied upon here.").

*Third*, the Court held Dramatic's preclusion argument based on Atticus's purported "control" of the Estate's conduct in the arbitration was baseless.  (DE 88 at 2.)  When presenting its "control"

argument to the Court, Dramatic did "not accurately describe[] its burden of establishing privity," arguing—despite all law to the contrary (*see* DE 63 at 31)—that mere "influence" was sufficient. The Court also held that Dramatic's (false) factual contention of "control"—necessitating costly discovery—had been founded on nothing more than "'unsubstantiated speculation.'" (DE 88 at 2 (quoting *Bermudez*, 790 F.3d at 374)). As a firsthand participant in the years-long arbitration, it was unreasonable for Dramatic to claim that Atticus somehow controlled the Lee Estate in which Dramatic knew Atticus had *no* direct involvement. Indeed, as Dramatic was also aware, Atticus's predecessor and the Lee Estate were recent litigation *adversaries*. (DE 65 at 33-34.)

*Fourth*, the Court held that Dramatic's statute of limitations defense was untimely under Second Circuit precedent.[5] (DE 87 at 11.) On the merits, Dramatic's argument to apply the one-accrual rule for copyright ownership claims—even where the scope of Atticus's and Sorkin's rights were, as this Court repeatedly explained, "irrelevant" to the resolution of this action (DE 87 at 10)—was equally unfounded; based on a reading of the statute of limitations that "invites serious error" (*Id.*); and, as with virtually every position taken by Dramatic in this action, "ma[de] little sense" (*id.*).

From beginning to end, Dramatic advanced arguments that were frivolous and, at minimum, objectively unreasonable. These were not close calls. Accordingly, this factor, to which "substantial weight" should be given, weighs strongly in favor of granting Atticus's motion for fees.

**B.**     **Dramatic's Litigation Conduct Was Objectively Unreasonable and Frivolous**

Because "litigants may torture civil procedure in any one of a hundred ways," attorney's fees "have been rightly awarded when the losing party conducted the litigation in a manner calculated to delay hearing on the merits and to increase the opposing party's costs." 5 Nimmer on Copyright §

---

[5] *Davis v. Shah*, 821 F.3d 231, 246 (2d Cir. 2016); *Busher v. Barry*, No. 20-3587-cv, 2021 U.S. App. LEXIS 32561, at *8-9 (2d Cir. Nov. 2, 2021); *United States v. Drame*, No. 18 Civ. 11480 (AKH), 2021 U.S. Dist. LEXIS 64268, at *8 (S.D.N.Y. Apr. 1, 2021); *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014); *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004).

14.10 [D][5][a][iii] (2023); *see Capitol Records, LLC v. ReDigi Inc.*, No. 1:12-cv-95 (RJS), 2022 U.S. Dist. LEXIS 65110, at *25 (S.D.N.Y. Apr. 7, 2022) (awarding fees and costs in copyright action to "deter[] wrongful litigation tactics").  An award is especially justified where a party's litigation tactics made the litigation "needlessly complicated."  *Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008), *aff'd*, 326 F. App'x 575 (2d Cir. 2009).

Dramatic protracted these proceedings through objectively unreasonable litigation conduct.

*First*, after Atticus cross-moved for summary judgment and cited just thirteen statements of undisputed material facts, Dramatic filed eighty one statements of additional fact in opposition, a forty-seven paragraph Rule 56(d) declaration, and forty exhibits totaling over 500 pages.  (DE 60, 61.)  Those voluminous filings' contents were, as the Court ruled, almost entirely "irrelevant," but nonetheless required Atticus to respond at the cost of extensive legal fees.  (DE 65 at 32.)

*Second*, despite have no reasonable basis upon which to claim that Atticus "controlled" the Estate in the arbitration, Dramatic initiated an expensive and time-consuming e-discovery process.  (DE 88.)  That process accomplished nothing, other than to confirm that Dramatic's assertion of "control" had, viewed in the best light, always been based on nothing more than "unsubstantiated speculation" (DE 88 at 2 (citation omitted)) and further needlessly increased the expense of this action.

*Third*, after the Court had already ruled on Atticus's cross-motion for summary judgment, Dramatic filed its untimely motion for summary judgment raising a statute of limitations defense that was as meritless as it was untimely (DE 77 at 13-17 & 83 at 7-9), causing Atticus to incur additional, unnecessary expense.

Each of these multiplying tactics further militate in favor of a complete fee award.

**C.**     **A Fee Award is Necessary to Further the Purposes of the Copyright Act**

The policy considerations underlying the Copyright Act further support an award of attorney's fees to Atticus.  The principal purpose of the Copyright Act is to "enrich[] the general public through access to creative works[.]"  *Fogerty*, 510 U.S. at 527.

By filing this lawsuit, Atticus has vindicated the ability of amateur performers and their audiences across the United States to enjoy both the Sorkin Play and Dramatic's version.  *See Kirtsaeng*, 579 U.S. at 205 (requiring court to consider whether "users" will "enjoy the substantive rights" of the Copyright Act).  For achieving that result, full compensation to Atticus is warranted.

An award of attorney's fees in this action is particularly appropriate given the skewed incentives that motivated Dramatic to advance its unreasonable arguments and litigation tactics. Despite having initiated this legal saga based on a "fundamental error of copyright law" (DE 87 at 10), Dramatic has been fully reimbursed for the more than $2.5 million in legal fees incurred in the arbitration (DE 37-8 at n.1) and, further, bears no responsibility for the fees incurred by its nine-attorney, three-law firm team in this litigation.  Permitting Dramatic to walk away from this litigation while bearing no financial responsibility for its own fundamental error would be (to say the least) unjust and inequitable, and *incentivize* rather than deter the types of meritless and anti-author positions taken by Dramatic in this action.

**III.     THE AMOUNT OF THE REQUESTED AWARD OF ATTORNEY'S FEES IS REASONABLE**

In determining the amount of fees that are reasonable, courts calculate a "lodestar" figure by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011).  Here, both the rates requested and the hours for which recovery of fees is sought are reasonable.

The recoupable attorney's fees incurred by Atticus in this action are set forth in detail in the accompanying declaration of Jonathan Zavin, lead counsel for Atticus in this action. *See* Zavin Decl., Ex. 8 (spreadsheet summary of fees).[6]  As set forth in the Zavin Declaration and the exhibits thereto, Atticus seeks an award of $395,162.90 in attorney's fees.[7]  These fees represent a significant 15% reduction on the standard rates charged by Atticus's counsel, Loeb & Loeb LLP ("Loeb"). *See id.* ¶ 6.

Loeb has significant experience litigating copyright matters.  Mr. Zavin and Mr. Hwang are nationally recognized copyright litigators with decades of experience litigating copyright actions across the country. *See* Zavin Decl. ¶¶ 7-13.  Loeb was recently recognized as the nation's top law firm in entertainment law (motion pictures and television) by *U.S. News – Best Lawyers*, and has earned national first-tier rankings in intellectual property, media and copyright litigation in legal industry publications such *The Legal 500*. *Id.* ¶ 4, Exs. 1 and 2.  Courts have recognized that Loeb's copyright litigators "possess[] a reputation and a level of skill and experience that go beyond that of the median partner" and as "among the most skilled and experienced attorneys handling intellectual property matters nationwide." *Spanski Enters. v. Telewizja Polska S.A.*, 278 F. Supp. 3d 210, 218-19 (D.D.C. 2017).

---

[6] Atticus has redacted information from the spreadsheet that would disclose information protected by the attorney-client privilege and/or work product doctrine.

[7] That amount represents the fees incurred by Atticus from November 1, 2022 through July 31, 2023.  Fees incurred litigating a motion for attorney's fees under the Copyright Act are recoverable. *See Ritchie v. Gano*, 756 F. Supp. 2d 581, 584 (S.D.N.Y. 2010) ("The Court finds that an award of attorneys' fees for work performed on the attorneys' fees motion is reasonable in this case."); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (awarding such fees because "[t]here is nothing in 17 U.S.C. § 505 or the case law interpreting it to suggest that any other rule should apply and, indeed, courts have awarded such fees in copyright cases").  The total amount of fees Atticus will incur litigating this motion is unknown at this time.  Atticus reserves the right to supplement and seek all of its fees, including the fees incurred to litigate this motion.

The fees sought by Atticus herein are the actual (discounted) fees and rates that Loeb charged, making the rates presumptively reasonable.  *See* Zavin Decl. ¶ 6; *see also Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (describing a "reasonable fee" as "what a reasonable, paying client would be willing to pay") (citation omitted); *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 144 (2d Cir. 2001) ("[A]ny evidence of the actual billing arrangement between [the litigant] and its counsel should be considered a significant, though not necessarily controlling, factor in determination of what fee is 'reasonable'").

The total amount of fees incurred is particularly reasonable and appropriate (in respect to the total number of hours billed), given that most of these fees were required because of the manner in which Dramatic chose to litigate this action, by raising numerous objectively unreasonable arguments, pressing for and taking discovery on factual issues that the Court deemed "irrelevant" and ultimately "unsubstantiated," and filing meritless motions based on positions that in every instance were squarely rejected by this Court.  And Dramatic cannot be heard to complain about the fees charged to Atticus after having retained a three-law firm team with nine separate counsel of record to litigate this action on its own behalf (DE 15-17, 25-27, 62, 67), nor after Dramatic was itself awarded $2.5-million-plus in attorneys' fees in the arbitration to litigate the same issues on which Atticus has prevailed in this action.

## **CONCLUSION**

For the foregoing reasons, Atticus respectfully requests that the Court grant its motion in its entirety and award Atticus $395,162.90 in attorney's fees.

Dated: August 15, 2023
New York, New York

LOEB & LOEB LLP

By: ___/s/ Jonathan Zavin_____
Jonathan Zavin
Wook Hwang
345 Park Avenue
New York, New York 10154
Tel: (212) 407-4000
Fax: (212) 407-4990

Keane Barger
35 Music Square East, Suite 310
Nashville, Tennessee 37203
Tel: (615) 749-8300
Fax: (615) 749-8308

*Attorneys for Plaintiff Atticus Limited Liability Company*

24355915