UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATTICUS LIMITED LIABILITY COMPANY,<br><br>    *Plaintiff*,<br><br>and<br><br>AARON SORKIN,<br><br>    *Involuntary Plaintiff*,<br><br>-against-<br><br>THE DRAMATIC PUBLISHING COMPANY,<br><br>    *Defendant.* | Case No.: 1:22-cv-10147-DLC |

**REPLY MEMORANDUM IN SUPPORT OF
ATTICUS'S MOTION FOR ATTORNEY'S FEES**

LOEB & LOEB LLP
Jonathan Zavin
Wook Hwang
345 Park Avenue
New York, New York 10154
Tel: (212) 407-4000
Fax: (212) 407-4990

Keane Barger
35 Music Square East, Suite 310
Nashville, Tennessee 37203
Tel: (615) 749-8300
Fax: (615) 749-8308

*Attorneys for Plaintiff
Atticus Limited Liability Company*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.   DRAMATIC'S CORE POSITION REGARDING COPYRIGHT EXCLUSIVITY WAS OBJECTIVELY UNREASONABLE .......................................................... 3

II.  DRAMATIC UNREASONABLY MULTIPLIED THIS LITIGATION THROUGH ITS ERRONEOUS AND UNFOUNDED CLAIMS OF "CONTROL" AND A NONEXISTENT TIME BAR .......................................... 6

III. DEFERRING THE FEE MOTION WOULD UNNECESSARILY DELAY THE RESOLUTION OF THIS CASE ........................................................................... 9

CONCLUSION ...................................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adsani v. Miller*,
   139 F.3d 67 (2d Cir. 1998) ................................................................................................... 10

*California v. Iipay Nation of Santa Ysabel*,
   No. 3:14-cv-02724-AJB-NLS, 2016 U.S. Dist. LEXIS 195068
   (S.D. Cal. Dec. 12, 2016) ....................................................................................................... 4

*Capitol Records, LLC v. ReDigi Inc.*,
   No. 1:12-cv-95, 2022 US Dist. LEXIS 65110
   (S.D.N.Y. Apr. 7, 2022) ......................................................................................................... 9

*Charles v. Seinfeld*,
   803 F. App'x 550 (2d Cir. 2020) ............................................................................................ 8

*Deferio v. City of Syracuse*,
   No. 5:16-CV-361 (LEK/TWD), 2018 U.S. Dist. LEXIS 103596
   (N.D.N.Y. June 21, 2018) ...................................................................................................... 9

*Diplomatic Man, Inc. v. Nike, Inc.*,
   No. 08 Civ. 139 (GEL), 2009 U.S. Dist. LEXIS 29343
   (S.D.N.Y. Apr. 6, 2009) ......................................................................................................... 6

*Dramatic Publ'g Co. v. Carter*,
   608 F. Supp. 3d 618 (N.D. Ill. 2022) ..................................................................................... 3

*Easter Unlimited, Inc. v. Rozier*,
   No. 18-CV-06637 (KAM), 2021 U.S. Dist. LEXIS 184636
   (E.D.N.Y. Sept. 27, 2021) ...................................................................................................... 8

*Hines v. City of Albany*,
   No. 06-CV-1517 (GTS/RFT), 2015 U.S. Dist. LEXIS 226
   (N.D.N.Y. Jan. 5, 2015) ....................................................................................................... 10

*Horror Inc. v. Miller*,
   No. 3:16-cv-1442 (SRU), 2022 U.S. Dist. LEXIS 173290
   (D. Conn. Sept. 26, 2022) ...................................................................................................... 6

*IBEW v. CSX Transp., Inc.*,
   369 F. Supp. 2d 982 (N.D. Ill. 2005),
   *aff'd*, 446 F.3d 714 (7th Cir. 2006) ........................................................................................ 4

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*,
   136 F.3d 537 (7th Cir. 1998) .................................................................................................. 4

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
   140 F.3d 70 (1st Cir. 1998) .......................................................................................... 5

*Matthew Bender & Co. v. W. Publ'g Co.*,
   240 F.3d 116 (2d Cir. 2001) ......................................................................................... 5

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
   No. C-12-4601 EMC, 2014 U.S. Dist. LEXIS 60901
   (N.D. Cal. Apr. 29, 2014) ..........................................................................................4-5

*Narragansett Elec. Co. v. Am. Home Assur. Co.*,
   999 F. Supp. 2d 511 (S.D.N.Y. 2014) ......................................................................... 8

*Santos v. Dist. Council of N.Y.C.*,
   619 F.2d 963 (2d Cir. 1980) ......................................................................................... 8

*Tancredi v. Metro. Life Ins. Co.*,
   378 F.3d 220 (2d Cir. 2004) ......................................................................................... 9

**Statutes Other and Authorities**

17 U.S.C. § 304(c) ................................................................................................................ 3

17 U.S.C. § 505 .................................................................................................................. 10

Fed. R. App. P. 7 ................................................................................................................ 10

**PRELIMINARY STATEMENT**

Dramatic's opposition does not dispute the reasonableness of Atticus's counsel's rates and fees in this action. It does not dispute that Dramatic itself recovered over *$2.5 million* in fees in a private arbitration it commenced largely to litigate the *same* issue on which Atticus prevailed in this action—Dramatic's purportedly continuing exclusivity, post-termination, to the stock and amateur stage rights to Harper Lee's *To Kill a Mockingbird*.[1] And it does not dispute that the Lee Estate is required to "indemnify" (and has been paying) Dramatic's fees in *this* action, thereby eliminating all of the typical disincentives against advancing the unreasonable and frivolous litigation positions and tactics Dramatic has asserted.

With no lodestar challenge (*see* DE 106 at 4 n.2), the sole remaining issue on this motion is whether Dramatic's unreasonable positions justify a fee award at all, after considering the issues on which Atticus's legal fees were primarily incurred: (1) Dramatic's core position that its exclusivity could *never* be terminated; (2) Dramatic's position, founded on "unsubstantiated speculation" (DE 88 at 2), that Atticus somehow "controlled" the Lee Estate in the prior arbitration and thus was bound to its result; and (3) Dramatic's last-ditch and meritless attempt to wield the statute of limitations, by then already waived, as a sword to bar any challenge to its (now-terminated) exclusivity.

Largely glossing over the substance of these issues, Dramatic's opposition leads (DE 106 at 7-10) with its purported reliance on a confirmation decision from the Northern District of Illinois that touched on *none* of these issues, and that Dramatic itself concedes touched on none of these issues. Dramatic continues by purporting to have also relied on "two decisions in the arbitration" (*id.* at 10-

---

[1] Dramatic's attempt to minimize the importance of its claimed copyright exclusivity in the arbitration (DE 106 at 17), while irrelevant, is belied by the undisputed fact that Dramatic recovered only $185,227.00 in damages on these "other" issues (DE 78-7, App. A at 4, ¶¶ 1-3). The value of these "other" rights necessarily depended entirely on Dramatic's claim of continued exclusivity post-termination, and for which Dramatic recovered $2.5 million-plus in attorney's fees.

1

15), one of which, in the arbitrator's own words, "did *not* grant summary judgment on the [exclusivity] issue to Dramatic" (DE 78-7, App. A at 3 n.2; emphasis added), and the second of which espoused an obviously wrong position that was at issue only because *Dramatic advanced it*; that had no support in any legal authority; and that this Court (and every other legal authority to address it) easily rejected as seeking to "thwart the plain language of the Copyright Act" (DE 65 at 18). That single arbitral award not only is not binding in this action (as this Court has held), but carries *no* persuasive authority under settled federal law.

Dramatic's defense—effectively that the "devil made me do it²—does not transform its attempt to "thwart the plain language of the Copyright Act" into one that could be considered reasonable in *this* action. That *none* of the decisions on which it relies even purported to rule on the other unreasonable positions Dramatic took here—on "control" (and privity) and the statute of limitations—shows that, in fact, neither the devil nor any arbitration decision support the objectively unreasonable positions it advanced here.

With the Lee Estate responsible for covering Dramatic's legal fees, a fee award is the only means by which Dramatic itself will be responsible for *any* of the fees incurred by any of the parties in litigating this dispute. The $444,341.77 in attorney's fees Atticus seeks to recover (DE 105-1 at 1, ¶ 2) is a fraction of the $2.5 million-plus fee award Dramatic recovered to press the same meritless position in the arbitration on which Atticus has prevailed here, and should be awarded in full.

---

² A phrase made famous by comedian Flip Wilson, to disclaim responsibility for his own actions. *See, e.g.,* https://www.psychologytoday.com/intl/blog/caveman-logic/202007/the-devil-made-me-do-it.

2

**ARGUMENT**

I. **DRAMATIC'S CORE POSITION REGARDING COPYRIGHT EXCLUSIVITY WAS OBJECTIVELY UNREASONABLE**

In this case, the plain language of the Copyright Act, the uniform authority contradicting Dramatic's position, and absence of *any* persuasive authority providing even a modicum of support to Dramatic's core position on copyright exclusivity led this Court to "readily conclude" that Dramatic's claim of interminable exclusivity was not only meritless, but so unreasonable as to "thwart the plain language of the Copyright Act." *See* DE 65 at 15, 18; *see also* 17 U.S.C. § 304(c) (unambiguously providing that "the exclusive *or* nonexclusive grant" of a copyright interest "is subject to termination") (emphasis added). Each of Dramatic's attempts in opposition to justify its nonsensical claim of interminable exclusivity provide no such justification.

*First*, Dramatic purports to rely (DE 106 at 7-10) upon the decision from the Northern District of Illinois confirming its award in the arbitration against the Lee Estate, to which neither Atticus nor Sorkin were parties. That decision provides no justification for Dramatic's position in this action for the simple reason that it did not address the merits of Dramatic's claimed exclusivity.[3] As that court held, the arbitrator's ruling on this issue was unreviewable on the merits because, "[u]nder the Federal Arbitration Act (FAA), 'arbitration awards are largely immune from . . . scrutiny in court.'" *Dramatic Publ'g Co. v. Carter*, 608 F. Supp. 3d 618, 621-22 (N.D. Ill. 2022) (quoting *Cont'l Cas. Co. v. Certain*

---

[3] Dramatic relies on the confirmation decision to claim that the decision supported its position concerning Atticus's purportedly limited rights "as a matter of contract law" (DE 106 at 7-9), yet again ignoring this Court's repeated observations that the scope of *Atticus's* rights was "irrelevant" to the issue in this case: whether *Dramatic* retains exclusive rights (DE 65 at 32; DE 87 at 10). Dramatic contradicts even itself after having repeatedly emphasized the same point in this action. *See, e.g.,* DE 50 at 2 n.1 (explaining this this case turns on "the limited issue before this Court regarding [Dramatic's claimed] exclusivity"); DE 77 at 2 (emphasizing that this case "***turns solely on the scope of [Dramatic's] copyright interest in the Novel***"); *id.* at 12 (explaining that this case requires resolution only of "the extent of Dramatic's ownership rights"). Dramatic's reliance on the confirmation decision to support this "irrelevant" point is, again, irrelevant, and misses the point of this motion entirely—to recover the fees incurred on the issues litigated herein.

3

*Underwriters at Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021)).  Dramatic concedes this much, noting that the Northern District of Illinois "did not expressly rule on the applicability of the derivative works exception to termination under the Copyright Act."  (DE 106 at 14.)  This decision thus provides no support for Dramatic's unreasonable claim of interminable exclusivity in this action.

*Second*, Dramatic reverts to relying on the arbitration itself (DE 106 at 10-15) to support its position, claiming that it "reasonably relied on two decisions in the Arbitration" (*id.* at 10) to justify its attempt to eviscerate copyright termination.  As an initial matter, Dramatic's claimed reliance on "two" arbitral decisions is contradicted by the record, as the three arbitrator panel did *not* adopt Dramatic's exclusivity argument on summary judgment.  *See* DE 36-7 at n.2.[4]  And the *single* decision adopting Dramatic's position, issued by a single private practice attorney serving as arbitrator in a private arbitration, holds *no* precedential value in this or any other federal court, including in the very jurisdiction in which Dramatic's arbitration was held.  *See, e.g., IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 543 (7th Cir. 1998) ("arbitrators' decisions are not intended to have precedential effect even in arbitration (unless given that effect by contract), let alone in the courts"); *IBEW v. CSX Transp., Inc.*, 369 F. Supp. 2d 982, 987 n.2 (N.D. Ill. 2005) ("arbitration awards are of no precedential value in a district court"), *aff'd*, 446 F.3d 714 (7th Cir. 2006); *see also, e.g., California v. Iipay Nation of Santa Ysabel*, No. 3:14-cv-02724-AJB-NLS, 2016 U.S. Dist. LEXIS 195068, at *34 (S.D. Cal. Dec. 12, 2016) ("it is a basic ten[et] of American jurisprudence that arbitration awards have no precedential value") (citation and quotation marks omitted).  As courts have thus held, the "arbitrator's analysis" in the prior arbitration has *no* bearing on whether "further litigation of the issue in federal court" was "objectively unreasonable" for purposes of this fee

---

[4] Even the single arbitrator who oversaw the hearing took Dramatic to task for attempting to mischaracterize the perfunctory summary judgment order.  *See* DE 78-7, App. at 3 n. 2 ("To be clear, the order did not grant summary judgment on the issue to Dramatic.  It simply denied the motion so that the issue could be more fully explored with the benefit of a full hearing.").

motion.⁵  *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2014 U.S. Dist. LEXIS 60901, at *24 n.4 (N.D. Cal. Apr. 29, 2014).

*Third*, perhaps recognizing that it cannot bootstrap off of a non-binding and non-precedential arbitration award, nor the confirmation decision having no relevance to any of the issues, Dramatic, remarkably, attempts to recast its argument altogether by contending that "[a]t no point did [the arbitrator] suggest that an author never could terminate of [*sic*] exclusive rights" (DE 106 at 13) and that it is a "gross mischaracterization" for Atticus to suggest that "Dramatic advanced the nonsensical position that exclusive licenses are *interminable*" (*id.* at 6 n.5).

The record tells a different story.  The very basis for this dispute, and reason Atticus has been required to expend *any* attorney's fees, was Dramatic's repeated insistence that it continued to hold exclusive rights following termination.  *See, e.g.*, DE 29 at 3 n.5 ("Section 304(c)'s termination provision bars any claim that Dramatic's rights do not remain exclusive"); *id.* at 12 ("Dramatic's non-first class rights remained exclusive following termination"); *id.* at 21 ("[T]he words in the exception say that all of the terms of an exclusive grant survive termination"); DE 50 at 5 (Dramatic's "exclusive rights . . . remained exclusive to Dramatic" following termination); *id.* at 12 n.8 (claiming that "following termination . . . Dramatic continues to own exclusive rights to stage non-first-class productions"); *id.* at 20-22 (HEADER: "**D.  Dramatic's exclusivity survives termination**"); DE 61 at 10 ¶ 74 ("Dramatic's non-first class rights remained exclusive following termination"); DE 77 at 11 ("The issue is whether Dramatic retained exclusive ownership rights in the rights granted to it by

---

⁵ This distinguishes all of the legal authority upon which Dramatic relies (DE 106 at 3, 5) for the proposition that "a litigant's previous success" supports its reasonableness.  In *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 123 (2d Cir. 2001), the Second Circuit found the litigant's position reasonable because the *Eighth Circuit* had previously agreed with it.  In *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998), the First Circuit found the litigant's position reasonable because a *district court* had previously adopted the same position.  By contrast, *no* court has held that an award in a private arbitration carries any persuasive value in a subsequent action against distinct parties.

Ms. Lee . . . ."); DE 83 at 5 ("The issue has always been about whether Dramatic could claim it held exclusive rights."); DE 86 at 1 ("Here, the issue is whether an exclusivity term survives termination under § 304(a) of the Copyright Act.").

Based on Dramatic's *unwavering* position in this regard, this Court concluded, inescapably, that Dramatic's "reading would thwart the plain language of the Copyright Act, **rendering any exclusive license interminable**." (DE 65 at 18 (emphasis added).) Dramatic's attempt to effectively withdraw its core position only serves to highlight that it never had any basis to oppose this action and require Atticus to expend the attorney's fees sought by this motion. *See, e.g., Horror Inc. v. Miller*, No. 3:16-cv-1442 (SRU), 2022 U.S. Dist. LEXIS 173290, at *6 (D. Conn. Sept. 26, 2022) (awarding fees because plaintiffs' claim of continuing rights following copyright termination was objectively unreasonable); *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL), 2009 U.S. Dist. LEXIS 29343, at *9-10 (S.D.N.Y. Apr. 6, 2009) (awarding fees where plaintiff claimed ownership of song despite "hav[ing] transferred" its rights prior to the litigation).

## II.  DRAMATIC UNREASONABLY MULTIPLIED THIS LITIGATION THROUGH ITS ERRONEOUS AND UNFOUNDED CLAIMS OF "CONTROL" AND A NONEXISTENT TIME BAR

Dramatic fares even worse in attempting to justify the purported "reasonableness" of its positions on privity, "control" and the statute of limitations. It was these issues that received the most briefing, to which *all* of the discovery was devoted, and over which a significant portion of Atticus's fees were expended. None of the scant attention Dramatic devotes these issues in opposition (DE 106 at 18-22) supports any claim to reasonableness.

*First*, and as an initial matter, Dramatic does not attempt to suggest that *any* of the prior decisions in its arbitration or the confirmation proceedings addressed any of these issues, because they did not. Dramatic's primary reliance on these prior decisions (DE 106 at 7-15) thus does nothing to support its claim of reasonable as to these issues either.

*Second*, as to the issue of "control" and related discovery, Dramatic's emphatic claim (DE 106 at 23) that Atticus "***volunteered***" to engage in this senseless discovery is, again, belied by the record. Dramatic repeatedly demanded broad swaths of discovery, including but not limited to the issue of control.[6] It was in response to the wild overbreadth of these demands that Atticus agreed, "in the interest of putting this [control] issue to rest" (DE 74 at 2), to produce its counsel's own emails to an Estate witness relating to the arbitration.[7] As this Court explained, "there's not going to be any control unless they are apparent from" these emails. (DE 84 at 6:15-16.) Yet even *after* this production was completed, Dramatic contended that Atticus's obvious *lack* of control was still based on "an incomplete record" (DE 86 at 2), leading the Court to deny Dramatic's request for *further* discovery on the grounds that its demands were based, as they always had been, on no more than "unsubstantiated speculation." (DE 88 at 2.) Atticus hardly "volunteered."

*Third*, Dramatic's claim of reasonableness with respect to its belated and meritless summary judgment motion, on statute of limitations grounds, is as unreasonable as it was when Dramatic first

---

[6] *See, e.g.,* DE 50 at 2-5 (demanding broad swaths of discovery under the HEADER: **Examples Of Dramatic's Necessary Discovery**," leading with the thesis: "These numerous issues require discovery and certainly make entertaining summary judgment inappropriate until that discovery can be completed…. Accordingly, pursuant to Fed. R. Civ. P. 56(d), Dramatic requests discovery on a variety of topics."); *id.* at 21 ("This is why, should the Court accept the Rudinplay Affiliates invitation to stray from the plain, unambiguous language of the statute, Dramatic is entitled to conduct discovery testing the basis of the Rudinplay Affiliates' conceit, including allowing Dramatic the opportunity to depose a representative who can identify and explain every term of the grant they believe should be included and every term of the grant they believe should be excluded post-termination."); DE 52 ¶ 1[sic] (Declaration of Kevin Tottis, enumerating demands "to provide information in support of Dramatic's request for discovery pursuant to Federal Rule of Civil Procedure 56(d)," and attaching 41 exhibits); DE 73 at 2 ("These facts, at a minimum, raise a plausible claim that Atticus controlled the litigation. Dramatic is entitled to full discovery of documents and other relevant evidence reflecting the Estate's and Atticus' relationship throughout the arbitration and the Illinois district court litigation.").

[7] As the Court explained (DE 84 at 8:22-9:5) in response to Dramatic's broad demands for discovery: "I'm not hearing much that makes a lot of sense. The issue here is not to allow a fishing expedition or theories that are implausible on their face but to identify if there's any targeted discovery that could actually resolve the issue of control."

7

advanced this position. Without the cover of any prior arbitral award on this issue, Dramatic does nothing more than continue to litigate the merits of its position (DE 106 at 20-22) that there was no waiver and that Atticus's claim was time-barred. But the Court completely rejected Dramatic's claim not to have waived this defense, based on controlling authority refuting Dramatic's position. *See* DE 87 at 11; *see also* DE 81 at 3-6 (collecting cases). Against the backdrop of this overwhelming and binding authority, the sparse and inapposite authority Dramatic cited before, and rehashes now, only underscores the frivolousness of its claim of non-waiver.[8]

With respect to the merits, Dramatic brazenly claims that this Court simply chose not to "accept the holdings" of cases it claims were on point and supportive of its position. (DE 106 at 21.) That is also wrong. As with the remainder of Dramatic's positions, no court has *ever* supported the proposition Dramatic advanced: that a *claimant's* mere *pronouncement* of copyright ownership, like Dramatic's here, time-bars any challenge to such ownership three years later.[9] *See* DE 81 at 8-10 (collecting cases). It was the patent unreasonableness of Dramatic's unprecedented position that led this Court not only to reject Dramatic's claim, but to conclude that Dramatic's position "invites serious error" and "makes little sense," and that the statute of limitations on Atticus's declaratory judgment claim "has not been triggered, much less run." (DE 87 at 10.)

---

[8] For example, in *Santos v. Dist. Council of N.Y.C.*, 619 F.2d 963, 967 (2d Cir. 1980), the Second Circuit held that a party does not waive its defenses at trial by omitting those defenses from its *own* pre-answer motions. In *Narragansett Elec. Co. v. Am. Home Assur. Co.*, 999 F. Supp. 2d 511, 516 (S.D.N.Y. 2014), the court permitted the defendant to raise its affirmative defense after a *partial* motion for summary judgment in the interest of justice, where complete relief was neither sought nor granted such that plaintiff suffered no prejudice from the delay.

[9] The two cases that Dramatic cites are obviously inapplicable. *See Charles v. Seinfeld*, 803 F. App'x 550, 551 (2d Cir. 2020) (applying one-accrual rule for claims of copyright ownership where the plaintiff—unlike Atticus and Sorkin—sued for copyright *infringement* based on his claimed authorship of TV show); *Easter Unlimited, Inc. v. Rozier*, No. 18-CV-06637 (KAM), 2021 U.S. Dist. LEXIS 184636, at *23 (E.D.N.Y. Sept. 27, 2021) (discussing the completely irrelevant issue of whether a non-party witness's declaration about his creation of the work at issue would be admitted where he did not dispute the plaintiff's ownership for over two decades).

Where a party presses meritless arguments after summary judgment, as Dramatic did and continues to do here, courts have not hesitated to award attorney's fees. *See Capitol Records, LLC v. ReDigi Inc.*, No. 1:12-cv-95, 2022 US Dist. LEXIS 65110, at *10-11 (S.D.N.Y. Apr. 7, 2022) (awarding fees because "following summary judgment, Defendants continued to assert legal arguments that had been foreclosed by the Court's decision, introduced new affirmative defenses that were clearly without merit, and attempted to burden Plaintiffs and the Court with frivolous motions and discovery requests"). There is no reason to deviate from this result here.

### III. DEFERRING THE FEE MOTION WOULD UNNECESSARILY DELAY THE RESOLUTION OF THIS CASE

Whether to defer ruling on a pending motion for attorney's fees lies within the Court's sound discretion. *Deferio v. City of Syracuse*, No. 5:16-CV-361 (LEK/TWD), 2018 U.S. Dist. LEXIS 103596, at *5 (N.D.N.Y. June 21, 2018) (declining "[t]o defer ruling on motion for attorney's fees"). Dramatic's attempt to defer ruling on this motion should be rejected, for any one of multiple reasons.

*First*, controlling precedent favors expedited resolution of fee motions to resolve both the merits and the fee determination for the purpose of consolidating appeal. *See Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) (explaining that 14-day deadline for filing fee motions is "to encourage a prompt ruling on fees to facilitate a consolidated appeal on both the merits and the attorney's fee issue" and "to resolve fee disputes efficiently, 'while the services performed are freshly in mind'") (citation omitted); *Deferio*, 2018 U.S. Dist. LEXIS 103596, at *5 (declining to defer because doing so would "run contrary to the Second Circuit's teaching that Rule 54(d) and its time limit for submitting fee applications are intended to avoid 'piecemeal appeals' by consolidating appellate resolution of fee award disputes with other, substantive arguments raised on appeal"). There is no reason to defer ruling in the interest of judicial economy, given that there is no lodestar dispute (*see* DE 106 at 4 n.2) and resolution of this motion thus does not require the Court to engage in the time-consuming process of combing through individual time entries. Deferring the fee motion, by

9

contrast, would require Atticus to wait for the Second Circuit's decision in the first appeal, re-brief the issue of attorney's fees, and wait for the Second Circuit's decision in a second, separate appeal over a fee award—all contrary to the intent behind the default rule.

*Second*, Dramatic has a vanishingly slim chance of prevailing on appeal, including on the core issue of post-termination copyright exclusivity. Deferring an award of fees makes little sense under these circumstances. *See Hines v. City of Albany*, No. 06-CV-1517 (GTS/RFT), 2015 U.S. Dist. LEXIS 226, at *8 (N.D.N.Y. Jan. 5, 2015) (declining request to defer because "Defendants fail to meet their burden to show that they are likely to succeed on the merits of their appeal").

*Third*, deferring a ruling on the fee motion would prejudice Atticus by effectively placing it in the position of an unsecured creditor. An appeal from an award of attorneys' fees typically requires a bond because the Copyright Act's fee-shifting statute, 17 U.S.C. § 505, explicitly authorizes attorney's fees as part of the prevailing party's costs. *See Adsani v. Miller*, 139 F.3d 67, 78 (2d Cir. 1998) ("Congress has decided to constrain the rights of copyright litigants upon appeal by exposing them to the potential imposition of a Rule 7 bond for the 'costs of appeal' where attorney's fees are awarded 'as part of the costs.'") (citation omitted). Deferring here would not only delay collection of the substantial attorney's fees that Dramatic unreasonably forced Atticus to incur, but would also leave Atticus with no security with respect to any potential fee award during the pendency of the first appeal, effectively bypassing the congressional intent underlying Section 505 of the Copyright Act and the bond requirement imposed by Fed. R. App. P. 7.

*Fourth*, and finally, Dramatic has no cause to complain of the issuance of a fee award pending appeal, given that its $2.5 million-plus in legal fees incurred in its own arbitration have been *fully paid* (*see* DE 37-8 at 1-2 n.1)—a fact that Dramatic concedes (*see* DE 106 at 17 (noting that these fees have been "repaid" to Dramatic))—despite the pendency of an appeal in that proceeding.

## CONCLUSION

For the foregoing reasons, Atticus respectfully requests that the Court grant its motion and award Atticus $444,341.77 in attorney's fees.

Dated: September 22, 2023
New York, New York

LOEB & LOEB LLP

By:   */s/ Jonathan Zavin*  .
    Jonathan Zavin
    Wook Hwang
    345 Park Avenue
    New York, New York 10154
    Tel: (212) 407-4000
    Fax: (212) 407-4990

    Keane Barger
    35 Music Square East, Suite 310
    Nashville, Tennessee 37203
    Tel: (615) 749-8300
    Fax: (615) 749-8308

*Attorneys for Plaintiff Atticus Limited Liability Company*