UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
ATTICUS LIMITED LIABILITY COMPANY,       :        22cv10147 (DLC)
                                         :
                     Plaintiff,          :        OPINION AND ORDER
     and                                 :
                                         :
AARON SORKIN,                            :
                                         :
           Involuntary Plaintiff,        :
                                         :
              -v-                        :
                                         :
THE DRAMATIC PUBLISHING COMPANY,         :
                                         :
                     Defendant.          :
                                         :
----------------------------------------X

APPEARANCES:

For plaintiff Atticus Limited Liability Company:
Jonathan Zavin
Wook J Hwang
Frank David D'Angelo
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154

Keane A. Barger
Loeb & Loeb, LLP
35 Music Square East
Suite 310
Nashville, TN 37203

For defendant The Dramatic Publishing Company:
Kevin Tottis
Keith Stolte
Max A. Stein
TottisLaw
401 N. Michigan Avenue
Suite 530
Chicago, IL 60611

David Blasband

McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016

Stefan M Mentzer
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

DENISE COTE, District Judge:

On August 1, 2023, judgment was entered for the plaintiff, Atticus Limited Liability Company ("Atticus"), in this copyright action.  This Court found as a matter of law that the defendant, The Dramatic Publishing Company ("Dramatic"), does not have exclusive rights to amateur productions of a play derived from Harper Lee's novel <u>To Kill a Mockingbird</u>.  On August 15, Atticus moved for attorney's fees pursuant to § 505 of the Copyright Act.  For the following reasons, Atticus is awarded a portion of the costs it seeks.

**<u>Background</u>**

Familiarity with the Opinions issued in this litigation is presumed.  <u>See</u> <u>Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.</u>, 22cv10147 (DLC), 2023 WL 3135745 (S.D.N.Y. Apr. 27, 2023); <u>Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.</u>, 22cv10147 (DLC), 2023 WL 4706770 (S.D.N.Y. July 24, 2023).  Only those facts relevant to Atticus' motion for attorney's fees are summarized below.

This lawsuit concerns rights to perform amateur productions of a play derived from Harper Lee's 1960 novel <u>To Kill a Mockingbird</u> (the "Novel").  In 1969, Lee granted Dramatic exclusive rights to license amateur acting rights to dramatizations of her novel (the "1969 Agreement").  Pursuant to the 1969 Agreement, Dramatic's then-President, Christopher Sergel, wrote a stage adaptation of the Novel (the "Sergel Play").  In 2011, Lee terminated the 1969 Agreement pursuant to § 304(c) of the Copyright Act, and subsequently entered into an agreement with Rudinplay, Inc.[1] to create a new dramatic adaption of the Novel, the "Sorkin Play."

On March 7, 2019, following a dispute over planned productions of the Sergel Play, Dramatic filed an arbitration demand against the Lee Estate.  In its demand, Dramatic asserted that the Lee Estate had breached the 1969 Agreement by hindering the full exercise of Dramatic's rights and interfering with its related licensing contracts.  Dramatic sought, <u>inter alia</u>, a declaration that it maintained exclusive amateur stage rights for any adaptation of <u>To Kill a Mockingbird</u>.  The arbitrator entered an interim award on October 21, 2021, and a final award on January 28, 2022 (collectively, the "Arbitration Award").

---

[1] Rudinplay and Atticus are entities owned, controlled, or operated by Scott Rudin.

The Arbitration Award found that Dramatic's exclusive rights
survived Lee's 2011 termination letter.  Additionally, as
relevant to this motion, the Arbitration Award requires the Lee
Estate to indemnify Dramatic against lawsuits brought by
Atticus, Rudinplay, and other similar third parties.  The
Arbitration Award is currently on appeal to the U.S. Court of
Appeals for the Seventh Circuit.

Atticus filed this federal lawsuit on November 30, 2022,
seeking a declaration that (1) "Atticus and Sorkin have the
right, in relation to [Dramatic], to present any and all Second-
Class, Stock, Amateur and Ancillary Performances [] of the
Sorkin Play in the United States;" and (2) "any such productions
of the Sorkin Play have not infringed and could not infringe any
purported copyright interest [Dramatic] claims to hold to the
Novel."  Dramatic moved to dismiss the complaint on January 23,
2023.  On February 6, Atticus cross-moved for summary judgment.

The Court denied Dramatic's motion to dismiss and granted
in part Atticus' cross-motion in its April 27 Opinion.  See
Atticus, 2023 WL 3135745.  The Court held that as a matter of
copyright law, specifically § 304(c) of the Copyright Act,
Dramatic does not currently possess exclusive rights to perform
in the U.S. amateur theatrical productions of works derived from
the Novel.  Id. at *5.  The Opinion, however, left open the

4

question of whether Atticus' right to assert as much was limited
by the doctrine of claim preclusion based on the ruling in the
Arbitration Award.  Id. at *13.

On May 11, Dramatic filed its answer, raising for the first
time a statute of limitations defense.  In a conference held on
May 25, Dramatic informed the Court that it planned to move for
summary judgment on the ground that the statute of limitations
bars this action.  Also in the conference, the Court addressed
whether Dramatic was entitled to discovery and the scope of any
such discovery with respect to the remaining defense of claim
preclusion.  The Court accepted Atticus' offer to produce its
own counsel's communications with counsel for the Lee Estate
during the period of the arbitration.  An Order of May 25 set a
briefing schedule for Dramatic's anticipated motion and set a
deadline of June 16 for the parties to submit a status letter
regarding fact discovery.

On June 2, Dramatic filed a motion for summary judgment
asserting its statute of limitations defense.  On June 16, the
parties submitted a letter regarding the status of fact
discovery on the issue of claim preclusion.  In an Opinion of
July 24, the Court denied Dramatic's motion for summary judgment
on its statute of limitations defense both "on the merits and as
untimely."  Atticus, 2023 WL 4706770, at *1.  The Court noted

5

that Atticus' "ownership interest in the Sorkin Play is not
being litigated here and therefore the three-year statute of
limitations under the Copyright Act for claims about its
ownership interest has not been triggered, much less run." Id.
at *3.  In an Order of July 25, the Court denied Dramatic's
motion for summary judgment due to claim preclusion.  The Order
stated that "Dramatic has failed to put forth any evidence
suggesting that Atticus controlled the Lee Estate's conduct in
the arbitration."[2]  Judgment was entered for the plaintiffs on
August 1.[3]

On August 15, Atticus moved for attorney's fees pursuant to
Rule 54(d) of the Federal Rules of Civil Procedure and 17 U.S.C.
§ 505.  The motion became fully submitted on September 22.
Atticus seeks to recover over $400,000 in attorney's fees.

On August 30, Dramatic filed a notice of appeal.  The
appeal is currently pending in the U.S. Court of Appeals for the
Second Circuit.

---

[2] The July 25 Order gave Dramatic an opportunity to show cause
why judgment should not be entered for Atticus following the
July 25 denial of its summary judgment motion.  Dramatic did not
seek to further litigate its theory of claim preclusion.

[3] On consent, an amended judgment was entered on August 28 to
clarify the geographic scope of the judgment.

## Discussion

Under the Copyright Act, a court may "in its discretion" award a reasonable attorney's fee to the prevailing party.  17 U.S.C. § 505.  A court may not, however, award "attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment." Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016) (citation omitted). In making that assessment, a court may consider "several nonexclusive factors," including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence."  Id. (citation omitted).  "[S]ignificant weight" should be given to the objective reasonableness or unreasonableness of the losing party's litigating position.  Id. at 209.  Yet despite its significance, objective reasonableness "can be only an important factor in assessing fee applications -- not the controlling one," and courts must take caution to avoid giving it "dispositive weight."  Id. at 208-09 (citation omitted).  Courts must instead "view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals."  Id. at 209.

Those goals are "well settled."  Id. at 204.  The Act "serves the purpose of enriching the general public through

access to creative works." Id. (citing Fogerty v. Fantasy,
Inc., 510 U.S. 517, 527 (1994)). It does so "by striking a
balance between . . . encouraging and rewarding authors'
creations while also enabling others to build on that work."
Id.

Atticus principally argues that its motion for attorney's
fees should be granted because the defendant's litigation
positions were objectively unreasonable. It describes
Dramatic's contention that exclusive licenses are interminable
as "nonsensical," unreasonable, frivolous, and contrary to an
unambiguous provision in the Copyright Act. It accuses Dramatic
of pressing for needless discovery in pursuit of its unfounded
speculation that Atticus controlled the Lee Estate in the
Estate's arbitration with Dramatic. Finally, Atticus argues
that Dramatic's resort to a statute of limitations bar was
"unfounded."

Atticus also argues that Dramatic's conduct throughout the
litigation, including its repeated requests for discovery and
its untimely assertion of a statute of limitations defense,
unnecessarily prolonged the litigation. Lastly, Atticus argues
that a fee award is necessary to further the purposes of the
Copyright Act because (1) Atticus has vindicated "the ability of
amateur performers and their audiences across the United States

8

to enjoy both the Sorkin Play and Dramatic's version" and (2) Dramatic has incurred no costs in this litigation due to the indemnification relief granted in the Arbitration Award, and accordingly there is a need for deterrence.

As explained in the July 24 Opinion, the arbitrator erred in his construction of § 304(c) of the Copyright Act.  See 2023 WL 4706770, at *3.  But, Dramatic having prevailed in the arbitration, this Court cannot find that Dramatic was unreasonable in relying on that same interpretation of § 304(c) when sued by Atticus.  To take any other position while Dramatic was defending the Arbitration Award before the Court of Appeals for the Seventh Circuit would have been unusual.  Therefore, Dramatic premised much of its defense in this litigation on the legal arguments presented to and adopted by the arbitrator in Dramatic's proceedings against the Lee Estate.

It should be noted, however, that Dramatic appears to have finally accepted that its § 304(c) argument is legally untenable.  For this reason, in opposing this motion for attorney's fees, it has mischaracterized the arguments it has presented to this Court.  In its brief in opposition to the motion for attorney's fees, Dramatic states that "Dramatic never -- not once -- claimed that the termination provision can never apply to an exclusive license."  Dramatic also added that it is

9

a "gross mischaracterization" for Atticus to suggest that
"Dramatic advanced the nonsensical position that exclusive
licenses are interminable."  But, from the beginning of this
litigation, that is the very position that Dramatic advanced.
Dramatic consistently asserted that "the words in the [Copyright
Act's derivate works] exception say that all of the terms of an
exclusive grant survive termination."[4]  Repeatedly, in this
litigation, Dramatic insisted that it continued to hold
exclusive rights following the termination of its license.
Despite this troubling attempt to reframe its litigation
positions, the Court declines to impose § 505 sanctions for
asserting as a defense a legal argument upon which it prevailed
in the arbitration.[5]

    Atticus is correct, however, that Dramatic needlessly and
unreasonably prolonged this litigation following the issuance of
the Court's April 27 Opinion.  Dramatic felt little restraint in
doing so since it is indemnified for the costs it incurred
defending this litigation.  It had no financial incentive to
restrain its litigation conduct and was not sufficiently mindful

---

[4] See Brief for Dramatic at 21, Atticus Ltd. Liab. Co. v.
Dramatic Publ'g Co., 22cv10147 (DLC), (S.D.N.Y. Jan. 23, 2023)
(ECF No. 29).

[5] Atticus points out that no court has held that an award in a
private arbitration carries any persuasive value in a subsequent
action against distinct parties.

of its obligations to act in good faith and advance arguments reasonably supported by the facts and the law.

Dramatic's untimely assertion of a statute of limitations defense unreasonably created additional motion practice and delayed entry of judgment.  Dramatic's briefing on the issue was nearly unintelligible and "invite[d] serious error."  Atticus, 2023 WL 4706770, at *3.  Likewise, Dramatic's preclusion argument, based on Atticus' purported "control" of the Estate's conduct in the arbitration, was far-fetched, untethered to any reliable evidence, and based on repeated misstatements of the legal definition of control.  See Atticus, 2023 WL 3135745, at *11.

Dramatic gives scant attention in its brief to the request for attorney's fees premised on these two unreasonable litigation positions.  Dramatic does argue, however, that it "exercised restraint" in its discovery requests because Dramatic did not serve any document requests or interrogatories on the issue of Atticus' purported control of the Lee Estate in the arbitration, and because Atticus volunteered to produce its counsel's emails exchanged with the Lee Estate during the arbitration.  It also argues that this discovery was crucial in "indicating the extent of Atticus' involvement in the underlying arbitration."  Dramatic again mischaracterizes the record.  In

11

its Rule 56(d) statement, Dramatic "request[ed] discovery on a variety of topics."  Atticus only volunteered the email discovery "in the interest of putting this issue to rest" given Dramatic's continued conjecture on the issue of control.  The Court also notified the parties that it would control the scope of discovery to save the parties' "time and expense" and to prevent "a fishing expedition" on "theories that are implausible on their face."  Even after Atticus produced counsel's emails, Dramatic continued to rely on unsubstantiated speculation and requested "additional, targeted discovery."  Moreover, Dramatic's discovery requests were premised on repeated misstatements of the law, law which the Court had set out in its April 27 Opinion.  See 2023 WL 3135745, at *11–12.

Dramatic next argues that its statute of limitations defense was reasonable because "it viewed Atticus' declaratory judgment claim as one involving competing claims of ownership and not copying," and because Dramatic cited cases to support that contention.  This attempt to relitigate the merits of its defense fails.  As the Court stated in its July 24 Opinion, Dramatic's arguments in support of its statute of limitations assertion "invite[d] serious error" and made "little sense." 2023 WL 4706770, at *3.

12

Finally, Dramatic argues that a fee award would not advance the public interest.  Not so.  Dramatic is in the business of licensing stock and amateur rights to its derivative work, the Sergel Play.  Through this lawsuit, amateur performers and their audiences will now have access as well to the Sorkin Play.  This public access to the two copyrighted works derived from the Novel is very much in the public interest.  Dramatic's assertion that it had the exclusive right to perform in amateur productions a derivative work from Harper Lee's masterpiece does not vindicate the public interest.

Dramatic does not contest that the amount of the requested attorney's fees is reasonable.  Accordingly, in an exercise of this Court's discretion, and after consideration of the goals of the Copyright Act, Kirtsaeng, and its progeny, Atticus' motion for attorney's fees is granted in part.  Atticus is entitled to recover the reasonable fees that it has incurred litigating this action since the Court issued its April 27, 2023 Opinion.

## Conclusion

Atticus' August 15, 2023 motion for attorney's fees is granted in part.  Atticus is awarded attorney's fees associated with litigating the case since April 27, 2023.  A scheduling

order addressing the calculation of the fee award accompanies this Opinion.

Dated:    New York, New York
          October 31, 2023

                                    DENISE COTE
                            United States District Judge

14